No. 25-5868

# In the
# United States Court of Appeals
# for the Ninth Circuit

Brittany Edwards, on behalf of D.B. Barlow,

*Petitioner-Appellee,*

v.

TikTok Inc.,

*Respondent-Appellant.*

On Appeal from the United States District Court
for the Central District of California
Judge Jesus G. Bernal, No. 5:25-cv-01216-JGB-SP

## OPENING BRIEF FOR RESPONDENT-APPELLANT

Anthony J Weibell
MAYER BROWN LLP
3000 El Camino Real
Two Palo Alto Square
Palo Alto, CA 94306-2112
(650) 331-2000
aweibell@mayerbrown.com

Noel J. Francisco
David K. Suska
JONES DAY
51 Louisiana Avenue, N.W.
Washington, D.C. 20001-2113
(202) 879-3939
njfrancisco@jonesday.com
dsuska@jonesday.com

*Counsel for Respondent-Appellant TikTok Inc.*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ii

JURISDICTIONAL STATEMENT ....................................................................................1

INTRODUCTION .............................................................................................................2

ISSUES PRESENTED ........................................................................................................5

STATEMENT OF THE CASE .........................................................................................5

    A.    Factual Background .................................................................................5

    B.    Procedural History .................................................................................8

SUMMARY OF ARGUMENT .......................................................................................10

STANDARD OF REVIEW ..............................................................................................12

ARGUMENT ....................................................................................................................12

I.    THIS COURT HAS JURISDICTION. .......................................................................12

    A.    The FAA Confers Appellate Jurisdiction. ......................................12

    B.    Edwards's Jurisdictional Arguments Fail. .....................................15

II.    THIS COURT SHOULD REVERSE. ........................................................................21

    A.    The Forum-Selection Clause in the Updated Terms Supersedes the Arbitration Clause in the Original Terms. ...........................21

    B.    The District Court Erred in Concluding Otherwise. ..................25

        1.    *Suski* Is Not "Inapposite." ..................................................25

        2.    The "Presumption of Arbitrability" Does Not Apply. ..................28

        3.    No "Clear and Specific Waiver" Was Needed—and the Forum-Selection Clause Is Clear and Specific in Any Event. ......................29

        4.    There Is No "Retroactivity" Issue—and the Forum-Selection Clause Applies Retroactively in Any Event. ...................31

    C.    Edwards's Remaining Arguments Fail. .........................................34

CONCLUSION .................................................................................................................36

CERTIFICATE OF SERVICE .........................................................................................39

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Applied Energetics, Inc. v. NewOak Cap. Mkts., LLC,*
645 F.3d 522 (2d Cir. 2011) ........................................................... 24, 28

*Best Life Assurance Co. of Cal. v. Comm'r of Internal Revenue,*
281 F.3d 828 (9th Cir. 2002) ................................................................ 13

*Brown v. Pac. Life Ins. Co.,*
462 F.3d 384 (5th Cir. 2006) ........................................................... 14, 16

*Bushley v. Credit Suisse First Boston,*
360 F.3d 1149 (9th Cir. 2004) ............................................................. 13

*C.M.D. ex rel. De Young v. Facebook, Inc.,*
621 F. App'x 488 (9th Cir. 2015) ......................................................... 36

*Carma Devs. (Cal.), Inc. v. Marathon Dev. Cal., Inc.,*
2 Cal. 4th 342 (1992) ......................................................................... 36

*Chiron Corp. v. Ortho Diagnostic Sys.,*
207 F.3d 1126 (9th Cir. 2000) ............................................................. 21

*Cir. City Stores, Inc. v. Adams,*
532 U.S. 105 (2001) ............................................................................ 22

*Coinbase, Inc. v. Bielski,*
599 U.S. 736 (2023) ................................................................. 15, 16, 17

*Coinbase, Inc. v. Suski,*
602 U.S. 143 (2024) ..................................................................... passim

*Colachis v. Griswold,*
2008 WL 5395682 (Cal. Ct. App. Dec. 29, 2008) ................................. 34

*Cornelius v. CVS Pharm. Inc.,*
  133 F.4th 240 (3d Cir. 2025) ...................................................26, 27, 31

*Edwards v. TikTok Inc.,*
  2025 WL 1090316 (C.D. Cal. Mar. 18, 2025) ..................................9

*Emps. Ins. of Wausau v. Granite State Ins. Co.,*
  330 F.3d 1214 (9th Cir. 2003) ....................................................25

*Famuyide v. Chipotle Mex. Grill, Inc.,*
  111 F.4th 895 (8th Cir. 2024) ................................................26, 27, 31

*Franco v. Greystone Ridge Condo.,*
  252 Cal. Rptr. 3d 149 (Cal. Ct. App. 2019) ...................................32

*Galaxia Elecs. Co., Ltd. v. Luxmax, U.S.A.,*
  2018 WL 11421517 (C.D. Cal. June 6, 2018) ..................................29

*GE Energy Power Conversion France SAS, Corp. v. Outokumpo Stainless USA, LLC,*
  590 U.S. 432 (2020) ...................................................................22

*Goldman, Sachs & Co. v. City of Reno,*
  747 F.3d 733 (9th Cir. 2014) ...................................... 24, 28, 29, 30

*Granite Rock Co. v. Int'l Bhd. of Teamsters,*
  561 U.S. 287 (2010) ...................................................................28

*Green Tree Fin. Corp.–Ala. v. Randolph,*
  531 U.S. 79 (2000) ............................................................. 13, 16

*Grey v. Am. Mgmt. Servs.,*
  139 Cal. Rptr. 3d 210 (Cal. Ct. App. 2012) ..............................23, 24

*Heinz v. TikTok, Inc.,*
  2024 WL 5418632 (Cal. Super. Ct. Oct. 2, 2024) ......................25, 33

*Homestake Lead Co. of Mo. v. Doe Run Res. Corp.,*
  282 F. Supp. 2d 1131 (N.D. Cal. 2003) ...................................29, 30

*IATSE Loc. 720 v. InSync Show Prods., Inc.,*
 801 F.3d 1033 (9th Cir. 2015) ................................................................passim

*Ingle v. Cir. City Stores, Inc.,*
 328 F.3d 1165 (9th Cir. 2003) .............................................................................21

*Jarboe v. Hanlees Auto Grp.,*
 267 Cal. Rptr. 3d 640 (Cal. Ct. App. 2020) .....................................................23

*John Wiley & Sons, Inc. v. Livingston,*
 376 U.S. 543 (1964) .............................................................................................21

*Kader v. S. Cal. Med. Ctr., Inc.,*
 317 Cal. Rptr. 3d 682 (Cal. Ct. App. 2024) ........................................26, 27, 31

*Keebaugh v. Warner Bros. Ent. Inc.,*
 100 F.4th 1005 (9th Cir. 2024) ..........................................................................35

*Lamps Plus, Inc. v. Varela,*
 587 U.S. 176 (2019) ..............................................................................11, 16, 21

*Memmer v. United Wholesale Mortg., LLC,*
 135 F.4th 398 (6th Cir. 2025) .....................................................26, 27, 31

*Morgan v. Sundance, Inc.,*
 596 U.S. 411 (2022) .............................................................................................22

*Pambakian v. Blatt,*
 859 F. App'x 808 (9th Cir. 2021) .......................................................................32

*Prudential Ins. Co. of Am. v. Lai,*
 42 F.3d 1299 (9th Cir. 1994) ..............................................................................13

*R.W.L. Enters. v. Oldcastle, Inc.,*
 226 Cal. Rptr. 3d 677 (Cal. Ct. App. 2017) .....................................................23

*Salgado v. Carrows Rests., Inc.,*
 244 Cal. Rptr. 3d 849 (Cal. Ct. App. 2019) .....................................................32

iv

*Smith v. Spizzirri,*
   601 U.S. 472 (2024) ...............................................................................15

*Stover v. Experian Holdings, Inc.,*
   978 F.3d 1082 (9th Cir. 2020) ...............................................................12

*Suski v. Coinbase, Inc.,*
   55 F.4th 1227 (9th Cir. 2022) ..........................................................passim

*United Steel & Serv. Workers Int'l Union v. Wise Alloys, LLC,*
   807 F.3d 1258 (11th Cir. 2015) ................................................14, 15, 19

*Vaden v. Discover Bank,*
   556 U.S. 49 (2009) ...................................................................................1

*Wallrich v. Samsung Elecs. Am., Inc.,*
   106 F.4th 609 (7th Cir. 2024) ...........................................................passim

*Wallrich v. Samsung Elecs. Am., Inc.,*
   No. 22-cv-05506 (N.D. Ill. Oct. 7, 2022), Dkt. 1 ........................................21

*Wolsey, Ltd. v. Foodmaker, Inc.,*
   144 F.3d 1205 (9th Cir. 1998) ...............................................................21

*WorldCrisa Corp. v. Armstrong,*
   129 F.3d 71 (2d Cir. 1997) .....................................................................30

**STATUTES**

9 U.S.C. § 3 ............................................................................................. 16, 18

9 U.S.C. § 4 ...........................................................................................passim

9 U.S.C. § 16 .........................................................................................passim

28 U.S.C. § 1291 .........................................................................................13

28 U.S.C. § 1292 .........................................................................................16

28 U.S.C. § 1331 ...........................................................................................1

Cal. Civ. Code § 1636...................................................................................................22

Cal. Civ. Code § 1698............................................................................................... 22, 30

## JURISDICTIONAL STATEMENT

This is an appeal from an order granting a petition to compel arbitration under Section 4 of the Federal Arbitration Act, 9 U.S.C. § 4. ER-5. The District Court had jurisdiction under Section 4 and 28 U.S.C. §§ 1331 and 1367 because the underlying dispute involves federal and related state-law claims. ER-93 (¶ 15). *See, e.g.*, *Vaden v. Discover Bank*, 556 U.S. 49, 62 (2009) ("The text of [Section] 4 drives our conclusion that a federal court should determine its jurisdiction by 'looking through' a [Section] 4 petition to the parties' underlying substantive controversy.").

The District Court entered its order granting the petition to compel on September 11, 2025. ER-18. TikTok Inc. filed a timely notice of appeal on September 16, 2025. ER-4. This Court has jurisdiction under Section 16(a)(3) of the Federal Arbitration Act, 9 U.S.C. § 16(a)(3), because the order compelling arbitration resolved the only issue in the case and thus is "a final decision with respect to an arbitration" for purposes of Section 16(a)(3). *See, e.g.*, *IATSE Loc. 720 v. InSync Show Prods., Inc.*, 801 F.3d 1033, 1040 (9th Cir. 2015) ("When the only matter before a district court is a petition to compel arbitration and the district court grants the petition, appellate jurisdiction may attach [under Section 16(a)(3)]."); *see also infra* Part I (addressing jurisdiction).

## INTRODUCTION

Some appeals present novel legal questions. This is not one of them. This case involves simple issues of contract and arbitration law that are controlled by precedent.

Petitioner-Appellee Brittany Edwards is the first of tens of thousands of claimants on whose behalf her counsel seeks to initiate arbitration against Respondent-Appellant TikTok Inc. ("TTI"). Edwards's counsel does so in an attempt to use the high costs of so-called "mass arbitration" to coerce TTI into a lucrative settlement. Indeed, Edwards's initial filing in this case laid bare that plan: It alleged that TTI "had been forced to settle" arbitration demands for rich sums and implied the same thing would happen here. This business plan hit a snag, though, because Edwards did not initiate her dispute with TTI until long after the parties had agreed to resolve "any" disputes "exclusively" in federal or state court rather than in arbitration.

Specifically, Edwards seeks to arbitrate claims relating to her daughter D.B. Barlow's use of the TikTok app. Edwards alleges that in 2019 D.B. created a TikTok account and began using the app with her permission. In creating this and other accounts, D.B. agreed to the then-operative TikTok Terms of Service—what TTI refers to as the "Original Terms." The Original Terms included an arbitration clause.

In July 2023, however, TTI amended the TikTok Terms of Service, as the Original Terms expressly allowed it to do, and blocked all users from accessing TikTok or creating new TikTok accounts until they had agreed to these amended Terms. The amended Terms—what TTI refers to as the "Updated Terms"—contained two

2

provisions relevant here. First was a forum-selection clause. That clause required TikTok users and TTI to "resolve" "[a]ny claim, cause of action[,] or dispute" "exclusively" in federal or state court. Second was an integration clause. That clause stated that the Updated Terms "completely replace any prior agreements," necessarily including the Original Terms along with their arbitration clause. D.B. agreed to the Updated Terms and continued using the app after July 2023. Edwards did too.

The first time Edwards ever raised a dispute with TTI was when she filed an arbitration demand in March 2024. By that time, however, the parties had long since replaced the arbitration clause in the Original Terms with the forum-selection clause in the Updated Terms. TTI thus declined to arbitrate. Six months later, Edwards filed a "Class Action Petition" to compel arbitration under Section 4 of the Federal Arbitration Act ("FAA") in the U.S. District Court for the Central District of California. The District Court denied that petition as procedurally improper and without prejudice to refiling. In May 2025, Edwards finally refiled, this time on behalf of D.B. alone. In September 2025, without holding a hearing, the District Court granted the petition to compel. The District Court did so based on the arbitration clause in the Original Terms.

This Court should reverse. To begin, this Court has jurisdiction over this appeal because the order compelling arbitration is "a final decision with respect to an arbitration" immediately appealable under Section 16(a)(3) of the FAA. Indeed, in *IATSE Local 720 v. InSync Show Productions, Inc.*, this Court confirmed that an order compelling arbitration is "a final decision with respect to an arbitration" for purposes

3

of Section 16(a)(3) where, as here, "the only matter before [the] district court is [the] petition to compel arbitration and the district court grants the petition." 801 F.3d 1033, 1040 (9th Cir. 2015). *IATSE* thus controls on the threshold jurisdictional issue.

The merits are equally clear. In *Suski v. Coinbase, Inc.*, this Court held that a forum-selection clause in a later agreement "supersedes" an arbitration clause in an earlier one. 55 F.4th 1227, 1230–31 (9th Cir. 2022). *Suski* reasoned that arbitration is a matter of contract, and under state contract law, a later agreement addressed to dispute resolution controls over an earlier one. *See id.* That holding decides this case. Indeed, this case is even easier than *Suski*, because here the later agreement—the Updated Terms—also includes an integration clause. There is thus no doubt that the District Court erred in holding that the arbitration clause applies and the forum-selection clause does not.

Nor is the District Court's error a trivial one. As both *Suski* and this case show, companies frequently update the terms of service governing the use of their products and the way in which companies and users must resolve disputes. Indeed, in the age of smart phones and similar devices, such updates are ubiquitous. Until now, everyone has understood that updated terms supersede earlier ones. But the order below turns that commonsense understanding on its head. By treating various provisions of the Original Terms and Updated Terms like items at a buffet, which users can pick and choose as they like, the District Court's order upsets settled expectations and impairs the ability of parties to an agreement to rely on the plain language of their agreement. This Court should apply *Suski* and reverse.

4

## ISSUES PRESENTED

1.	Whether this Court has jurisdiction over this appeal from the order granting the petition to compel arbitration because the order is "a final decision with respect to an arbitration" under Section 16(a)(3) of the FAA.

2.	Whether this Court should reverse the order granting the petition to compel arbitration because the parties replaced their original agreement containing an arbitration clause with a new agreement that instead contained a forum-selection clause requiring the parties to litigate any dispute in federal or state court.

## STATEMENT OF THE CASE

This appeal arises from D.B. Barlow's creation of TikTok accounts and use of the TikTok app. D.B. is the daughter of Petitioner-Appellee Brittany Edwards. ER-18; ER-92 (¶ 13). The TikTok app is an entertainment platform for creating, sharing, and viewing videos. ER-31. Edwards alleges that Respondent-Appellant TikTok Inc. operates the TikTok app. ER-92 (¶ 14).

### A.	Factual Background

According to Edwards, in 2019, when D.B. was eight years old, she created her first TikTok account. ER-88 (¶ 1). Edwards alleges that D.B. did so without her knowledge, yet she also alleges that she "gave D.B. permission" to use the app. ER-96 (¶¶ 30–31). In creating this and other accounts, D.B. agreed to the then-operative TikTok Terms of Service. ER-94 (¶ 20). If one does not agree to the Terms, one cannot

5

create an account. *Id.*; ER-55 (¶ 3); ER-81–82; ER-119–20. For shorthand, TTI refers to the then-operative Terms as the "Original Terms."

The Original Terms included three provisions relevant here. The first specified that TikTok users agreed to arbitrate any disputes with TTI relating to use of the app. ER-143–46. The second added that "[t]his arbitration provision will survive any termination of these [T]erms." ER-144. The third was a notice that TTI could "amend" the Terms "from time to time" and that "continued access or use of the [app] … constitutes your acceptance" of the amended Terms. ER-118.

In July 2023, TTI told users that it was changing the Terms and blocked access to the app unless and until users clicked a button stating "I agree" to the changed terms. ER-55–57 (¶¶ 4–5, 7–8); ER-76; ER-78. Specifically, TTI advised users that it was altering "how we'll resolve disputes." ER-80. For existing users, such as D.B., TTI did so through an in-app pop-up notice that users could not simply dismiss and that linked to a webpage that displayed this banner message at the top:

> *TikTok is updating its Terms of Service for U.S. users regarding how we'll resolve disputes when you use TikTok. Beginning July 31, 2023, to continue using TikTok, users will need to agree to the updated Terms of Service. To learn more, please see* Section 12. Dispute Resolution → *below. Click* here ↗ *to view our current Terms of Service.*

ER-55–57 (¶¶ 4–9); ER-80.

Consistent with that message, the July 2023 Terms—which TTI refers to as the "Updated Terms"—replaced the arbitration clause with a forum-selection clause. ER-19; ER-85–86. The forum-selection clause stated that "[a]ny claim, cause of action[,] or

6

dispute … shall … be resolved exclusively in the U.S. District Court for the Central District of California or the Superior Court of the State of California, County of Los Angeles." ER-86. The Updated Terms also included an integration clause stating that the Updated Terms "constitute the whole legal agreement" between TTI and users, and that the Updated Terms "completely replace any prior agreements"—necessarily including the Original Terms. ER-83. Here is how these provisions looked to users:

### B. Exclusive venue.

These Terms and any claims, causes of action, of any kind or character, or demand arising out of or relating to the Terms will be governed by the laws of the State of California. Any claim, cause of action or dispute, arising out of or relating to these Terms shall also be resolved exclusively in the U.S. District Court for the Central District of California or the Superior Court of the State of California, County of Los Angeles. You also agree to submit to the personal jurisdiction of either of these courts for the purpose of litigating any such claim.

ER-86.

**Entire Agreement.** These Terms constitute the whole legal agreement between you and TikTok and govern your use of the Services and completely replace any prior agreements between you and TikTok in relation to the Services.

ER-83.

D.B. continued to use the app after July 2023, including with accounts she later created. ER-20; ER-34; ER-60. Edwards did too with accounts that she created. ER-34; ER-61. By continuing to use the app with preexisting accounts, and also by creating and using the app with new accounts, D.B. and Edwards each agreed to the Updated Terms—several times over. ER-55–57 (¶¶ 2–3, 7–8, 10–11); ER-60–61. Indeed, after

July 2023, one could not use the TikTok app with an existing or new account without assenting to the Updated Terms.[1] ER-55–57 (¶¶ 3, 7–8); *see also* ER-89 (¶ 4) (Edwards alleging that "anyone who signed up for TikTok from February 2019 through July 2023 agreed to and accepted the TikTok Terms of Service").

## B. Procedural History

In December 2023—*i.e.*, months *after* the Updated Terms superseded the Original Terms—Edwards's counsel notified TTI that counsel's *other clients* intended to demand arbitration against TTI. ER-102 (¶ 48). Then, in March 2024, Edwards's counsel identified Edwards for the first time in a demand for arbitration filed with the American Arbitration Association ("AAA"). *Id.* (¶ 50). TTI declined to participate in the AAA proceedings because the forum-selection clause in the Updated Terms had replaced the arbitration clause in the Original Terms. ER-33; ER-102–03 (¶ 51). AAA recognized the dispute about whether an arbitration agreement existed and held the arbitration in abeyance pending judicial resolution of the arbitrability issue as required by *Coinbase, Inc. v. Suski*, 602 U.S. 143 (2024) ("*Coinbase II*"). ER-104 (¶¶ 57–58).[2]

---

[1] While existing users received notice of and could agree to the Updated Terms via the non-dismissible in-app pop-up notice described above, those who created accounts after the July 2023 updates received notice of and could agree to the Updated Terms as part of the account-creation process. ER-55 (¶ 3); ER-81.

[2] *Coinbase II* held that courts must resolve disputes about whether a forum-selection clause in a later agreement supersedes an arbitration clause in an earlier agreement even if the earlier agreement also has a delegation clause. 602 U.S. at 152.

In September 2024—*i.e.*, more than a year after the Updated Terms superseded the Original Terms—Edwards filed a "Class Action Petition" in the U.S. District Court for the Central District of California, seeking to compel arbitration on behalf of "*every user of TikTok from 2019–2023 who has any dispute with TikTok.*" *Edwards v. TikTok Inc.*, 2025 WL 1090316, at *3 (C.D. Cal. Mar. 18, 2025) (emphases added). The District Court denied that petition as procedurally improper. *See id.* (concluding that the request was "relatively novel" and supported only by "conclusory" argument). But the denial was without prejudice to Edwards "refiling … an individual petition." *Id.* at *4.[3]

In May 2025, Edwards refiled a petition to compel, this time on behalf of D.B. alone. ER-87. This petition asserted that the TikTok app was "defective[ly] design[ed]" in a way that "contributed to a mental health crisis affecting millions of children," and that it "intercepted" private communications, all in violation of federal and state law. ER-88–89 (¶¶ 2–3). The petition further alleged that TTI "had been forced to settle" arbitration demands for greater sums than had been recovered through litigation. ER-

---

[3] That Edwards's counsel sought to compel arbitration on behalf of "every user" who had "any dispute" with TTI is hardly surprising. Some of Edwards's trial counsel are affiliated with a firm called "ClaimsHero," and courts have taken notice of ClaimsHero's aggressive litigation and arbitration tactics, with Judge Alsup suggesting at a recent hearing in one case that the firm had engaged in a "blatant attempt" to "trick" large numbers of people into opting out of a class settlement in pursuit of a "quick buck"—an effort Judge Alsup likened to "extortion." Bonnie Eslinger, *Anthropic Judge Rips Opt-Out Law Firm As "Quick Buck" Ploy*, Law360 (Nov. 13, 2025), https://www.law360.com/technology/articles/2410821?nl_pk=9cd9806e-e6a0-4571-83d9-e1fd6617d43e; *see also, e.g.*, Bonnie Eslinger, *Anthropic Judge Warns Firm Against 'Extortion' In Opt-Out Bid*, Law360 (Nov. 25, 2025), https://www.law360.com/articles/2415405/anthropic-judge-warns-firm-against-extortion-in-opt-out-bid.

9

196. Perhaps for that reason, the only relief the petition sought was an order under Section 4 of the FAA compelling TTI to arbitrate the dispute. ER-106.

On September 11, 2025, the District Court granted the petition to compel. ER-18. The District Court recognized that the Updated Terms require litigation rather than arbitration of "any" disputes. ER-19. Nonetheless, the District Court deemed the arbitration clause in the Original Terms still applicable based on what it called the "survivability clause"—the provision in the Original Terms stating that the arbitration clause "survive[s] any termination of these [T]erms." ER-21. The District Court also relied on a "presumption of arbitrability" that it said could be defeated only by a "clear and specific waiver" of the arbitration clause in the Original Terms, and it judged the forum-selection clause in the Updated Terms not clear and specific enough about moving all disputes out of arbitration and back into the court system. ER-22.

TTI appealed from the District Court's order, ER-4, and Edwards in turn moved to dismiss the appeal for lack of jurisdiction, Dkt. 13.1.[4] On November 4, 2025, this Court denied the motion to dismiss "without prejudice" to Edwards "renewing" her jurisdictional arguments "in the answering brief." Dkt. 19.1.

## SUMMARY OF ARGUMENT

**I.**     This Court has jurisdiction. Congress has authorized appeals from "a final decision with respect to an arbitration." 9 U.S.C. § 16(a)(3). In *IATSE*, this Court held

---

[4] Unless otherwise indicated, "Dkt." refers to docket entries in this appeal.

that an order compelling arbitration is "a final decision with respect to an arbitration" where "the only matter before [the] district court is [the] petition to compel arbitration and the district court grants the petition." 801 F.3d at 1040. That is this case. The District Court granted Edwards's petition to compel arbitration, and the petition to compel was "the only matter" before the District Court, *id.*—Edwards did not file a complaint asserting substantive claims and did not ask for any other relief. The order compelling arbitration thus "end[ed] the litigation on the merits and le[ft] nothing more … to do." *Id.* (citations omitted). That made it "a final decision with respect to an arbitration" under Section 16(a)(3) of the FAA and *IATSE. Id.*

**II.** This Court should reverse the order granting the petition to compel. "[A]rbitration is strictly a matter of contract." *Lamps Plus, Inc. v. Varela*, 587 U.S. 176, 184 (2019) (citation omitted). Courts thus apply "state-law principles of contract formation and interpretation" when "determining whether parties have agreed to submit to arbitration." *Suski*, 55 F.4th at 1230. Applying those principles here, reversal is the correct result. The Updated Terms include a forum-selection clause requiring litigation of "any" dispute with TTI and an integration clause stating that the Updated Terms "completely replace any prior agreements," necessarily including the Original Terms. As a matter of state law, then, the forum-selection clause in the Updated Terms displaces the arbitration clause in the Original Terms. And *Suski* confirms it. There this Court held that a later-in-time forum-selection clause controls over an arbitration clause. The Court's opinion in that case says everything necessary to decide this one.

11

The District Court's contrary ruling is riddled with errors. The District Court deemed *Suski* "inapposite," but it did so on the basis of factual distinctions that do not actually exist. The District Court invoked the "presumption of arbitrability," but the Supreme Court and this Court have held that the presumption is inapplicable where, as here, the question is whether the parties have even agreed to arbitrate. The District Court demanded that TTI show a "clear and specific waiver" of the arbitration clause, but the "clear and specific waiver" rule is just a corollary of the presumption and so is also inapposite. Besides, the forum-selection clause is clear and specific—it requires the parties to "resolve" "any" disputes "exclusively" in federal or state court. Lastly, the District Court diagnosed a "retroactivity" problem, but that misunderstands when the dispute here arose, and in all events, state law is clear that a forum-selection clause like this one applies to disputes that pre- and post-date the underlying agreement.

## STANDARD OF REVIEW

This Court reviews *de novo* the order granting the petition to compel arbitration. *See, e.g.*, *Stover v. Experian Holdings, Inc.*, 978 F.3d 1082, 1085 (9th Cir. 2020).

## ARGUMENT

### I. THIS COURT HAS JURISDICTION.

Edwards has argued that this Court lacks jurisdiction. Dkt. 13.1; Dkt. 18.1. That is incorrect. Indeed, that argument runs headlong into binding precedent.

#### A. The FAA Confers Appellate Jurisdiction.

Section 16(a)(3) of the FAA authorizes appeals from "a final decision with

12

respect to an arbitration." 9 U.S.C. § 16(a)(3). In *IATSE*, this Court held that an order compelling arbitration under Section 4 of the FAA is "a final decision with respect to an arbitration" where "the only matter before [the] district court is [the] petition to compel arbitration and the district court grants the petition." 801 F.3d at 1040. The Court reasoned that such a decision "ends the litigation on the merits and leaves nothing more for the court to do but execute the judgment"—the traditional standard for assessing finality for purposes of appellate jurisdiction in other contexts. *Id.* (quoting *Bushley v. Credit Suisse First Boston*, 360 F.3d 1149, 1152 (9th Cir. 2004), in turn quoting *Green Tree Fin. Corp.–Ala. v. Randolph*, 531 U.S. 79, 86 (2000)).[5]

*IATSE* was not a novel decision; for years, this Court had interpreted Section 16(a)(3) that way. *See, e.g.*, *Prudential Ins. Co. of Am. v. Lai*, 42 F.3d 1299, 1302 (9th Cir. 1994) ("[I]f the motion to compel arbitration in a given case is the only claim before the district court, a decision to compel arbitration is deemed to dispose of the entire case, and permit appellate review under 9 U.S.C. § 16(a)(3)."). And other circuits have too. As the Seventh Circuit recently explained in an opinion that approvingly cited

---

[5] *IATSE* also held that the order there was separately appealable under 28 U.S.C. § 1291 because the district court had relied on Section 301 of the Labor Management Relations Act in compelling arbitration and the Supreme Court had previously held that orders under Section 301 are appealable under Section 1291. *See IATSE*, 801 F.3d at 1038–39. The fact that *IATSE* identified alternative bases for appellate jurisdiction—Section 16(a)(3) and Section 1291—does not detract from the force of its holding about Section 16(a)(3) specifically. *See, e.g.*, *Best Life Assurance Co. of Cal. v. Comm'r of Internal Revenue*, 281 F.3d 828, 834 (9th Cir. 2002) ("[W]here a decision rests on two or more grounds, none can be relegated to the category of obiter dictum." (citation omitted)).

13

*IATSE*: "[I]n a [Section] 4 setting, the only issue before the district court is a petition to compel arbitration; no underlying substantive claims for relief are raised. Therefore, once the court issues its arbitration order (leaving nothing else for it to do), it renders a final decision that is appealable under [Section] 16(a)(3)." *Wallrich v. Samsung Elecs. Am., Inc.*, 106 F.4th 609, 616 (7th Cir. 2024); *see also United Steel & Serv. Workers Int'l Union v. Wise Alloys, LLC*, 807 F.3d 1258, 1266 (11th Cir. 2015) ("[A]n order compelling arbitration triggered by a complaint seeking solely such an order is generally considered final and appealable because it resolves the only issue before the district court." (citation omitted))[6]; *Brown v. Pac. Life Ins. Co.*, 462 F.3d 384, 391 (5th Cir. 2006) ("[A] final decision with respect to an arbitration is appealable under [S]ection 16(a)(3). A decision is considered final under the FAA if it ends the litigation on the merits and leaves nothing more for the court to do but execute the judgment." (citations omitted)).

This Court has jurisdiction under Section 16(a)(3) and *IATSE*. The District Court granted Edwards's petition to compel arbitration under Section 4 of the FAA. ER-18; ER-93 (¶ 15). The petition to compel was "the only matter" before the District Court, *IATSE*, 801 F.3d at 1040—Edwards did not file a complaint asserting substantive claims and did not ask the District Court for any other relief. *See* ER-105–06. The District Court's order granting the standalone petition to compel thus "end[ed]

---

[6] The Eleventh Circuit ultimately dismissed the appeal in *Wise Alloys* for lack of a timely notice of appeal. *See* 807 F.3d at 1270. There is no such defect here.

14

the litigation on the merits and le[ft] nothing more … to do but execute the judgment."

*IATSE*, 801 F.3d at 1040 (citations omitted). That made it "a final decision with respect to an arbitration" under Section 16(a)(3) and *IATSE*. *Id.* It is that simple.

### B.      Edwards's Jurisdictional Arguments Fail.

Edwards's motion to dismiss this appeal did not address Section 16(a)(3). Nor did it discuss *IATSE* or any of the other cases cited above. Instead, Edwards relied on Section 16(b)(2) of the FAA, 9 U.S.C. § 16(b)(2); the Supreme Court's decisions in *Smith v. Spizzirri*, 601 U.S. 472 (2024), and *Coinbase, Inc. v. Bielski*, 599 U.S. 736 (2023) ("*Coinbase I*"); the fact that the District Court purported to enter a "stay"; and the fact that the petition to compel alleged that TTI has not paid the costs and fees of arbitration. Dkt. 13.1; Dkt. 18.1. These arguments all fail.

1.      Section 16(b)(2) does not preclude this appeal. Section 16(b)(2) says that "an appeal may not be taken from an interlocutory order … directing arbitration to proceed under section 4 of this title." 9 U.S.C. § 16(b)(2). But the District Court's order was not *interlocutory*; it was *final*. As this Court explained in *IATSE*, "[w]hen the only matter before a district court is a petition to compel arbitration and the district court grants the petition," the order is "final," and "appellate jurisdiction may attach [under Section 16(a)(3)]." 801 F.3d at 1040. That is because the order "ends the litigation on the merits and leaves nothing more … to do." *Id.* (citations omitted). Again, other circuits agree. *See, e.g.*, *Wise Alloys*, 807 F.3d at 1269 ("Significantly, [S]ection 16 distinguishes between 'final decision[s]' and 'interlocutory orders' in setting forth

15

permissible ways of proceeding. The statute expressly specifies that final decisions are appealable under it."); *Brown*, 462 F.3d at 390–91 (similar); *Wallrich*, 106 F.4th at 615–16 (similar).[7] All these decisions follow from the Supreme Court's holding in *Green Tree*. *See* 531 U.S. at 89 ("[W]here, as here, the District Court has ordered the parties to proceed to arbitration, and dismissed all the claims before it, that decision is 'final' within the meaning of [Section] 16(a)(3), and therefore appealable."); *cf. Lamps Plus*, 587 U.S. at 181 & n.1 (reaffirming *Green Tree* and rejecting attempt to label such an order "interlocutory"). Section 16(b)(2)'s limitation on interlocutory appeals is thus a red herring. This Court has jurisdiction under a different provision—Section 16(a)(3).[8]

2.      *Spizzirri* and *Coinbase I* do not concern Section 16(a)(3) and do not overrule *IATSE*. *Spizzirri* involved a complaint that had been removed to federal court and an application to stay the litigation in favor of arbitration under Section 3 of the FAA, 9 U.S.C. § 3. *See* 601 U.S. at 474–75, 478–79. *Coinbase I* involved a class-action complaint filed in federal court and an order denying a motion to compel. *See* 599 U.S. at 738.

---

[7] *Wallrich* explains what would be a non-appealable, interlocutory order compelling arbitration: An order compelling arbitration in a case where the plaintiff had also filed a complaint pressing substantive claims. In that scenario, the district court "ha[s] substantive claims before it that are distinct from a request to arbitrate," and so "[t]he district court's interlocutory order compelling arbitration … would not be appealable." 106 F.4th at 615–16. As explained above, that is not this case. The only matter before the District Court was Edwards's request to arbitrate.

[8] For the same reason Section 16(b)(2) does not apply here—the District Court's order is *final*, not *interlocutory*—28 U.S.C. § 1292 does not apply. *Contra* Dkt. 13.1 at 5–6 (Edwards suggesting that the District Court needed to certify an interlocutory appeal).

Those cases thus did not involve the kind of order on appeal here—a final order granting a standalone petition to compel arbitration under Section 4 of the FAA.

Glossing over these fundamental differences among the cases, Edwards has asserted that *Spizzirri* and *Coinbase I* "fatally undermine[] the reasoning" of *IATSE*. Dkt. 18.1 at 4 (internal quotations omitted). But Edwards does not explain why that is so. Nor does she cite any authority for that reading of *Spizzirri* and *Coinbase I*. In fact, neither *Spizzirri* nor *Coinbase I* so much as mentions Section 16(a)(3). Those cases thus cannot be understood as *sub silentio* overruling precedent about Section 16(a)(3).

Indeed, the Seventh Circuit's recent decision in *Wallrich* expressly rejects the argument that *Spizzirri* affects appeals under Section 16(a)(3). *See Wallrich*, 106 F.4th at 617 ("Finally, the consumers believe that the Supreme Court's recent decision in [*Spizzirri*] supports their argument. Not so."). As *Wallrich* explained: "*Spizzirri* merely held that a district court must issue a stay (rather than dismiss a case) when a party requests a stay under [Section] 3." *Id*. But "[*Spizzirri*] does not apply" where, as here and as in *Wallrich*, a party filed a civil action solely to petition the court to compel arbitration under Section 4, and the petition to compel was the only issue in the case. *Id. Spizzirri* is thus inapposite. And *Coinbase I* is too. There the Supreme Court held that when a district court denies a petition to compel, and the losing party takes an interlocutory appeal under Section 16(a)(1) of the FAA, 9 U.S.C. § 16(a)(1), the district court must stay all remaining proceedings pending the appeal. 599 U.S. at 737. That holding about the mandatory nature of a stay in such circumstances does not affect TTI's right to

17

appeal the District Court's final order under Section 16(a)(3) and *IATSE*.

**3.** Edwards's motion also contended that the District Court's order is not appealable because the District Court purported to "retain[] jurisdiction and stay[] the case pending the outcome of arbitration." Dkt. 13.1 at 6. Again, that is incorrect.

For one thing, the putative "stay" was legally improper. Section 3 of the FAA authorizes a stay only "on application of one of the parties" and only when "the issue involved in such suit or proceeding is referable to arbitration." 9 U.S.C. § 3. But Edwards never applied for a stay. *See* ER-105–06 (Edwards asking for an order compelling arbitration under Section 4 but never mentioning a stay under Section 3). Nor does this case involve an issue referable to arbitration—the only issue is the arbitrability question that a court must decide under *Coinbase II*. *Supra* n.2; *see also* ER-104 (¶ 57) (Edwards recognizing that under *Coinbase II* arbitrability is for a court to decide). The District Court thus could not lawfully issue a stay. *See Wallrich*, 106 F.4th at 617 (explaining that courts lack authority to issue stays under Section 3 where "no party sought a stay" and "the case did not involve an issue referable to arbitration").

For much the same reason, the putative "stay" had no practical effect. Again, the only matter before the District Court was the standalone petition to compel under Section 4. *See* ER-105–06. Edwards did not file a complaint pressing substantive claims or seek any other relief such that there might have been further judicial proceedings to stay. *See id.* Once the District Court granted the petition, there was nothing left of the case. As *IATSE* explained in analogous circumstances, "[t]he entry of the stay, in these

18

circumstances, had no legal or practical effect." 801 F.3d at 1039.

Moreover, despite Petitioner's claim that the District Court "retained jurisdiction," Dkt. 13.1 at 6, the District Court in fact directed the Clerk to "close the case," ER-25. The District Court itself thus appeared to recognize that its order compelling arbitration was final in that it "le[ft] nothing more … to do." *IATSE*, 801 F.3d at 1040 (citations omitted). The order is thus appealable under Section 16(a)(3).

Finally, if there were any doubt, *IATSE*, *Wallrich*, and *Wise Alloys* would put it to rest. In those cases, too, the district court granted a standalone petition to compel and then "inexplicably stayed the case." *Wallrich*, 106 F.4th at 615; *see IATSE*, 801 F.3d at 1039 (similar); *Wise Alloys*, 806 F.3d at 1267–68 (similar). The stay was "inexplicable" in those cases for the same reason it is here—having granted the petition, there was nothing left for the court to do. *See Wise Alloys*, 807 F.3d at 1268 ("[T]he district court's stay was neither warranted nor authorized" because "there was nothing to stay."); *IATSE*, 801 F.3d at 1039 (similar); *Wallrich*, 106 F.4th at 615–16 (similar). And those cases could not have been clearer that a putative "stay" in such circumstances *does not* deprive the appellate court of jurisdiction under Section 16(a)(3). As this Court explained in *IATSE*: "[A] district court presented with a petition to compel arbitration and no other claims cannot prevent appellate review of an order compelling arbitration by issuing a stay." 801 F.3d at 1041; *see Wise Alloys*, 807 F.3d at 1270 ("Because the stay entered by the district court was neither required nor authorized, we conclude that it could not have transformed what was, by definition, a final order into an interlocutory

19

one."); *Wallrich*, 106 F.4th at 616 (rejecting argument that "a stay, even an unnecessary one in a [Section] 4 proceeding, precludes appellate review [under Section 16(a)(3)]").

4.      Edwards's final bid for dismissal—advanced for the first time at the tail end of her reply in support of her motion—hinged on her allegation that TTI has not paid the costs and fees of arbitration. According to Edwards, that allegation somehow transforms the District Court's appealable, final order granting the petition to compel into a non-appealable, interlocutory order. Dkt. 18.1 at 8–9. This, too, is incorrect.

Edwards's allegation about TTI not paying the costs and fees of arbitration was part and parcel of her demand for an order compelling arbitration. Her prayer for relief sought "an order, pursuant to 9 U.S.C. § 4, that compels [TTI] to arbitrate … including by paying AAA's arbitration fees and costs." ER-106. Edwards did not press a standalone substantive claim asking the District Court to award her those costs and fees (on, say, a breach-of-contract theory). *See* ER-105–06. Indeed, she did not even ask the District Court for those costs and fees; she asked only for an order compelling TTI to arbitrate the dispute, which would entail TTI paying AAA its share of the arbitration costs and fees. *See id.* Having brought a standalone petition to compel, she must accept the jurisdictional consequences—namely, that the order granting the petition is final and appealable under Section 16(a)(3) and *IATSE*.

Once again, *Wallrich* is instructive. There, too, the petitioners alleged that the respondent had failed to pay the costs and fees of arbitration and prayed for an order compelling arbitration, "which includes paying the arbitration fees and costs AAA

20

determines are necessary." Petition at 10 (¶ 43), *Wallrich v. Samsung Elecs. Am., Inc.*, No. 22-cv-05506 (N.D. Ill. Oct. 7, 2022), Dkt. 1. That reference to "arbitration fees and costs" did not undermine the finality and appealability of the order granting the petition because, at the end of the day, the petition "merely sought an order compelling arbitration." *Wallrich*, 106 F.4th at 617. So too here. This Court's jurisdiction is secure.

## II.   THIS COURT SHOULD REVERSE.

Turning to the merits, this is a straightforward appeal. The District Court's order compelling arbitration rests on a misapplication of state contract law and misunderstanding of federal arbitration precedent. This Court should reverse.

### A.   The Forum-Selection Clause in the Updated Terms Supersedes the Arbitration Clause in the Original Terms.

The "first principle" of the Supreme Court's arbitration jurisprudence is that "[a]rbitration is strictly a matter of contract." *Lamps Plus*, 587 U.S. at 184 (citation omitted). "[D]isputes are subject to arbitration if, and only if, the parties actually agreed to arbitrate those disputes." *Coinbase II*, 602 U.S. at 145. The Supreme Court has "emphasized that foundational FAA principle many times." *Lamps Plus*, 587 U.S. at 184 (citation omitted); *see also, e.g.*, *John Wiley & Sons, Inc. v. Livingston*, 376 U.S. 543, 547 (1964) ("[A party] cannot be compelled to arbitrate if an arbitration clause does not bind it."). So has this Court. *See, e.g.*, *Suski*, 55 F.4th at 1230; *Ingle v. Cir. City Stores, Inc.*, 328 F.3d 1165, 1170 (9th Cir. 2003); *Chiron Corp. v. Ortho Diagnostic Sys.*, 207 F.3d 1126, 1130 (9th Cir. 2000); *Wolsey, Ltd. v. Foodmaker, Inc.*, 144 F.3d 1205, 1210 (9th Cir. 1998).

Because arbitration is strictly a matter of contract, "courts apply state-law principles of contract formation and interpretation" when "determining whether parties have agreed to submit to arbitration." *Suski*, 55 F.4th at 1230. Congress adopted the FAA to overcome "hostility of American courts to the enforcement of arbitration agreements." *Cir. City Stores, Inc. v. Adams*, 532 U.S. 105, 111 (2001). But the FAA "does not alter background principles of state contract law regarding the scope of [such] agreements." *GE Energy Power Conversion France SAS, Corp. v. Outokumpo Stainless USA, LLC*, 590 U.S. 432, 437 (2020) (citation omitted). Said differently, the FAA "make[s] arbitration agreements as enforceable as other contracts, *but not more so.*" *Morgan v. Sundance, Inc.*, 596 U.S. 411, 418 (2022) (emphasis added) (citation omitted).

California law governs the interpretation of the agreements at issue, and a handful of state-law rules are dispositive.[9] *First*, "[a] contract must be so interpreted as to give effect to the mutual intention of the parties as it existed at the time of contracting." Cal. Civ. Code § 1636. *Second*, "[w]hen a contract is reduced to writing, the intention of the parties is to be ascertained from the writing alone." *Id.* § 1639. *Third*, "[a] contract in writing may be modified by a contract in writing." *Id.* § 1698(a). *Fourth*,

---

[9] The Updated Terms state that "[t]hese Terms and any claims, causes of action, of any kind or character, or demand arising out of or relating to the Terms will be governed by the laws of the State of California." ER-86. That choice-of-law provision appears in the same paragraph as the forum-selection clause. *See id.* Edwards agreed below that California law applies here based on this choice-of-law provision. ER-96 (¶ 28). She did not even attempt to explain how the choice-of-law provision applies if, as she contends, the adjacent forum-selection clause does not.

22

"when parties enter into a second contract dealing with the same subject matter as their first contract … the latter contract prevails to the extent they are inconsistent"—after all, the aim is to give effect to the parties' mutual intention at the time of contracting. *Suski*, 55 F.4th at 1230. *Fifth*, and relatedly, "an integration clause" in a later agreement "weighs heavily against" a finding that the parties intended to remain bound by their prior agreement. *R.W.L. Enters. v. Oldcastle, Inc.*, 226 Cal. Rptr. 3d 677, 686–87 (Cal. Ct. App. 2017); *see also, e.g.*, *Jarboe v. Hanlees Auto Grp.*, 267 Cal. Rptr. 3d 640, 648–49 (Cal. Ct. App. 2020) ("[T]erms contained in an integrated written agreement may not be contradicted by prior or contemporaneous agreements."); *Grey v. Am. Mgmt. Servs.*, 139 Cal. Rptr. 3d 210, 213 (Cal. Ct. App. 2012) (explaining that "common sense dictates" that an agreement with an integration clause supersedes all prior agreements).

Applying these rules requires reversing the decision below. The parties here had two agreements governing use of the TikTok app: the Original Terms and the Updated Terms. Each had a provision about dispute resolution: the Original Terms called for arbitration, while the Updated Terms called for litigation in federal or state court. *Supra* pp. 5–8. As a matter of state law, the Updated Terms with its forum-selection clause "supersedes" the Original Terms with its arbitration clause. *Suski*, 55 F.4th at 1230–31. The integration clause in the Updated Terms reinforces that "common sense" result. *Grey*, 139 Cal. Rptr. 3d at 213. The order below therefore must be reversed.

*Suski* confirms that result. There the defendant moved to compel arbitration based on an agreement with an arbitration clause. 55 F.4th at 1228–29. The plaintiffs

23

resisted, pointing to a later agreement with a forum-selection clause. *Id.* After determining that a judge rather than an arbitrator had to resolve the arbitrability issue, this Court held that the later agreement with the forum-selection clause superseded the earlier agreement with the arbitration clause. *Id.* at 1230–31. In doing so, this Court looked to the same principles discussed above: state law determines whether parties agreed to arbitration; a written contract can always be modified by a written contract; and a later contract addressing an issue, such as dispute resolution, prevails over an earlier one addressed to the same issue. *Id. Suski* makes short work of this appeal.

Indeed, this case is even easier than *Suski*, because here the later agreement—the Updated Terms—also includes an integration clause. The integration clause states that the Updated Terms "constitute the whole legal agreement between you and TikTok" and "completely replace any prior agreements"—necessarily including the Original Terms. *Supra* p. 7. The District Court thus clearly erred in granting Edwards's petition to compel arbitration based on the arbitration clause in the Original Terms. By the time the parties' dispute arose (no earlier than December 2023), the Updated Terms had replaced the Original Terms. *See Suski*, 55 F.4th at 1230–31; *see also, e.g.*, *Goldman, Sachs & Co. v. City of Reno*, 747 F.3d 733, 746 (9th Cir. 2014) (holding that forum-selection clause in later agreement superseded default obligation to arbitrate); *Applied Energetics, Inc. v. NewOak Cap. Mkts., LLC*, 645 F.3d 522, 525–26 (2d Cir. 2011) (holding that forum-selection clause in later agreement superseded arbitration clause in earlier one).

While the District Court erred, a California state court reached the correct result

24

in another case involving TTI and the Updated Terms. *Heinz v. TikTok, Inc.*, 2024 WL 5418632, at *1 (Cal. Super. Ct. Oct. 2, 2024).[10] The *Heinz* court looked to state law and denied a petition to compel arbitration of a dispute against TTI precisely because the petitioner there had assented to the Updated Terms, which "eliminated arbitration as a means of dispute resolution and required that any dispute 'be resolved exclusively in the U.S. District Court for the Central District of California or the Superior Court of the State of California, County of Los Angeles.'" *Id.* at *4 (quoting the forum-selection clause in the Updated Terms). The District Court should have done the same here.

**B.     The District Court Erred in Concluding Otherwise.**

The District Court offered various reasons for distinguishing *Suski* and granting the petition to compel. None withstands scrutiny. Take each in turn.

**1.     *Suski* Is Not "Inapposite."**

In just a few sentences, the District Court deemed *Suski* "inapposite" on "three grounds." ER-22. *First*, the arbitration agreement in *Suski* did not include a "survivability clause"—*i.e.*, a provision like the one in the Original Terms stating that "[the] arbitration [clause] will survive any termination of these [T]erms." ER-19; ER-22. *Second,* "the instant case deals with claims that arose prior to the [Updated Terms]" taking effect. ER-22. *Third,* "the two agreements [in *Suski*] were irreconcilable." *Id.*

---

[10] This Court "may consider unpublished state decisions, even though such opinions have no precedential value." *Emps. Ins. of Wausau v. Granite State Ins. Co.*, 330 F.3d 1214, 1220 (9th Cir. 2003).

This was error at every step. Most glaringly, the arbitration agreement in *Suski* did contain a survivability clause. *See* Appellant's Excerpts of Record at ER-104, ER-111–12, ER-120, *Suski v. Coinbase, Inc.*, No. 22-15209 (9th Cir. May 11, 2022), Dkt. 14 (stating that the arbitration clause "shall survive the termination or expiration of this Agreement"). The survivability clause did not make a difference in *Suski* because, as a matter of California law, parties are always free to modify a written agreement with another written agreement. *See Suski*, 55 F.4th at 1230–31; *see also supra* pp. 22–23. The survivability clause thus should not have made a difference here either. After all, the order below cannot rest on a distinction with *Suski* that does not exist.

Nor is *Suski* distinguishable in terms of when the dispute arose. Again, the District Court thought the dispute here arose "prior to the [Updated Terms]" taking effect—*i.e.*, before July 31, 2023—whereas in *Suski* the dispute arose after the later agreement took effect. ER-22. But, in fact, the dispute here also arose after the Updated Terms took effect. For purposes of arbitration, a dispute arises "when the parties bec[o]me adverse to one another," which typically means "when an injured party sends the defendant a demand letter" or "requests arbitration." *Memmer v. United Wholesale Mortg., LLC*, 135 F.4th 398, 409 (6th Cir. 2025); *see Cornelius v. CVS Pharm. Inc.*, 133 F.4th 240, 247–48 (3d Cir. 2025) (similar); *Kader v. S. Cal. Med. Ctr., Inc.*, 317 Cal. Rptr. 3d 682, 688 (Cal. Ct. App. 2024) (similar); *see also Famuyide v. Chipotle Mex. Grill, Inc.*, 111 F.4th 895, 898 (8th Cir. 2024) (holding that dispute arose when lawsuit was filed rather than when conduct occurred because, at that earlier point, "[petitioner] had not asserted

any right, claim, or demand against [respondent] and [respondent] had not registered disagreement with [petitioner]"). Edwards's counsel did not contact TTI about any potential dispute until December 2023, and Edwards's counsel did not identify Edwards (or D.B.) as potential claimants until the initial AAA filing in March 2024. *Supra* pp. 8–9. The dispute here thus arose no earlier than December 2023—*i.e.*, months *after* the Updated Terms took effect. *See Memmer*, 135 F.4th at 409; *Cornelius*, 133 F.4th at 247–48; *Kader*, 317 Cal. Rptr. 3d at 688; *see also Famuyide*, 111 F.4th at 898.

That leaves the District Court's explanation that the agreements in *Suski* were "irreconcilable." ER-22. The implication is that the agreements here are not—*i.e.*, that unlike in *Suski*, there is a way for the Original Terms and Updated Terms to coexist. That is incorrect. Here, as there, the first agreement contained an arbitration clause and a survivability clause. *Supra* p. 6. Here, as there, the second agreement contained a forum-selection clause. *Supra* pp. 6–7. The agreements here are thus no less "irreconcilable" than the ones in *Suski*. If anything, the agreements here are even more clearly in conflict than those in *Suski*, because here the later agreement also included an integration clause stating that the Updated Terms "completely replace any prior agreements." *Supra* p. 7. The agreements here are thus fundamentally in conflict—by design. And indeed, on the very next page of its order, the District Court described this case as one where "two *opposing* contracts exist." ER-23 (emphasis added); *see also id.* (again stating that Updated Terms and Original Terms "oppose one another"). It stands

27

to reason that the agreements here are either reconcilable or in conflict. They cannot be reconcilable one moment and in conflict the next.

### 2. The "Presumption of Arbitrability" Does Not Apply.

The errors do not end there. Apart from incorrectly distinguishing *Suski*, the District Court wrongly relied on the "presumption of arbitrability" in deeming the arbitration clause in the Original Terms still applicable. ER-22.

The Supreme Court and this Court have both held that the presumption of arbitrability does not apply where the parties dispute the *existence* rather than the *scope* of an arbitration agreement. *See, e.g.*, *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 301 (2010) (explaining that the presumption applies "*only* where a validly formed and enforceable arbitration agreement is ambiguous about whether it covers the dispute at hand" (emphasis added)); *Goldman Sachs*, 747 F.3d at 742 ("[W]e do not apply the so called 'presumption in favor of arbitrability' in every case. … The presumption in favor of arbitrability applies only where the *scope* of the agreement is ambiguous as to the dispute at hand[.]"); *see also, e.g.*, *Applied Energetics*, 645 F.3d at 526 ("While doubts concerning the scope of an arbitration clause should be resolved in favor of arbitration, the presumption does not apply to disputes concerning whether an agreement has been made."). The presumption thus does not apply here; this case is about whether the arbitration clause in the Original Terms continues to exist. Indeed, *Suski* made this point explicitly: "The 'scope' of an arbitration clause concerns how widely it applies, not

28

whether it has been superseded by a subsequent agreement." 55 F.4th at 1230. The District Court's misplaced reliance on the presumption is yet another reason to reverse.

### 3. No "Clear and Specific Waiver" Was Needed—and the Forum-Selection Clause Is Clear and Specific in Any Event.

The District Court committed another error in requiring TTI to show that the Updated Terms included a "clear and specific waiver" of the arbitration clause in the Original Terms and in concluding that TTI had failed to make that heightened showing. ER-22. Indeed, this was incorrect in at least four different respects.

*First*, *Suski* rejects the idea that a later agreement must include a "clear and specific waiver" of an arbitration clause in an earlier one. As *Suski* explained: "Coinbase is correct that the [later agreement] contain[s] no language specifically revoking the parties' arbitration agreement in the [earlier agreement]. By including the forum selection clause, however, the [later agreement] evince[s] the parties' intent not to be governed by the [earlier agreement's] arbitration clause." 55 F.4th at 1231. This Court made the same point a few years earlier in *Goldman Sachs*: "While this certainly would be an easier case if the parties had included an express waiver [of the arbitration clause], we know of no requirement that they do so." 747 F.3d at 744; *see also, e.g.*, *Galaxia Elecs. Co., Ltd. v. Luxmax, U.S.A.*, 2018 WL 11421517, at *6 (C.D. Cal. June 6, 2018) ("An express waiver of arbitration rights in a forum-selection clause is not required.").

*Second*, the District Court traced the "clear and specific waiver" rule to *Homestake Lead Co. of Missouri v. Doe Run Resources Corp.*, 282 F. Supp. 2d 1131, 1142 (N.D. Cal.

2003). ER-22; ER-24. *Homestake Lead*, in turn, traced it to the presumption of arbitrability. *See* 282 F. Supp. 2d at 1141–42 (explaining that "[a]ny other" approach would "run[] contrary to the FAA's presumption in favor of arbitrability"). But the presumption does not apply here as a matter of precedent. *Supra* pp. 28–29. It follows that the presumption's twin, the "clear and specific waiver" rule, does not either.[11]

*Third*, applying a "clear and specific waiver" rule here conflicts with the Supreme Court's recent decision in *Morgan*. There the Supreme Court held that it was reversible error for a court to apply an "arbitration-specific procedural rule[]" based on the FAA's "policy favoring arbitration." 591 U.S. at 419. *Morgan* reasoned that the FAA "is about treating arbitration contracts like all others, not about fostering arbitration." *Id.* That view is consistent with the approach this Court took in cases like *Suski* and *Goldman Sachs. See Suski*, 55 F.4th at 1230–31; *Goldman Sachs*, 747 F.3d at 744.

In light of *Morgan* (and *Suski* and *Goldman Sachs*), what the District Court should have done is interpret the Original Terms and Updated Terms just like any other contracts. Had it done so, it would have applied the standard state-law rule that "[any] contract in writing may be modified by a contract in writing," Cal. Civ. Code § 1698(a)—no "clear and specific waiver" required. It also would have given effect to

---

[11] *Homestake Lead* also traced the "clear and specific waiver" rule to *WorldCrisa Corp. v. Armstrong*, 129 F.3d 71 (2d Cir. 1997). *See Homestake Lake*, 282 F.Supp.2d at 1142. But *WorldCrisa* likewise found the rule implicit in the presumption of arbitrability. *See WorldCrisa*, 129 F.3d at 74–75. In other words, the "clear and specific waiver" rule is just the presumption of arbitrability all the way down. It thus does not apply here.

30

the integration clause in the Updated Terms. *Supra* pp. 23–25. The District Court then would have concluded—straightforwardly—that the forum-selection clause applies.

*Finally*, even assuming that the District Court were right to apply a clear-statement rule, the Updated Terms would pass the test. TTI told users that it was altering "how we'll resolve disputes" when it gave notice of the Updated Terms. *Supra* p. 6. The forum-selection clause in the Updated Terms then stated that it applies to "[*a*]*ny* claim, cause of action[,] or dispute." ER-86 (emphasis added). It further stated that litigation in federal or state court is the "exclusive[]" way to "resolve[]" disputes. *Id.* And the integration clause emphasized that the Updated Terms "constitute the whole legal agreement" and "*completely* replace *any* prior agreements"—including the Original Terms. ER-83 (emphases added). To require more is not to demand a clear statement of intent to litigate rather than arbitrate, but to impose a magic-words test.

### 4. There Is No "Retroactivity" Issue—and the Forum-Selection Clause Applies Retroactively in Any Event.

The District Court's final mistake was in concluding that the forum-selection clause does not apply "retroactively"—that is, to a dispute that "arose prior to the formation of the [Updated Terms]." ER-21; ER-23. For starters, the District Court misdiagnosed the retroactivity issue. As explained, for purposes of arbitration, a dispute arises "when the parties bec[o]me adverse to one another," which is usually "when an injured party sends the defendant a demand letter" or "requests arbitration." *Memmer*, 135 F.4th at 409; *see Cornelius*, 133 F.4th at 247–48; *Kader*, 317 Cal. Rptr. 3d at 688; *see*

31

*also Famuyide*, 111 F.4th at 898. Here that was no earlier than December 2023 (when Edwards's counsel first contacted TTI about a potential dispute), and arguably not until March 2024 (when Edwards's counsel first identified Edwards or D.B. as a potential claimant). *Supra* pp. 8–9. Either way, that is *after* the Updated Terms took effect.

But even assuming for sake of argument that the converse were true—*i.e.*, that the dispute here did arise before the forum-selection clause took effect—the forum-selection clause would still apply as a matter of its plain text and state law. Again, the forum-selection clause is broad; it requires litigation of "[*a*]*ny* claim, cause of action[,] or dispute." ER-86 (emphasis added). There is no limitation to claims, causes of action, or disputes arising "only in the future" or "only after this agreement takes effect."

Nor do California courts read such a limitation into the text. On the contrary, the rule in California (and elsewhere) is that a dispute-resolution provision in a contract applies to claims that pre- and post-date the contract unless the contract expressly provides otherwise. In other words, the actual rule is the opposite of the one that the District Court applied. *See, e.g.*, *Franco v. Greystone Ridge Condo.*, 252 Cal. Rptr. 3d 149, 156 (Cal. Ct. App. 2019) (holding that dispute-resolution provision applying to "[a]ny and all claims" applied to "*all* claims, whether they had already accrued, or not, at the time the [a]greement was executed"); *Salgado v. Carrows Rests., Inc.*, 244 Cal. Rptr. 3d 849, 852–53 (Cal. Ct. App. 2019) (collecting similar cases from California and elsewhere for the same proposition); *see also Pambakian v. Blatt*, 859 F. App'x 808, 809 (9th Cir. 2021)

32

(relying on *Franco* to reject argument that arbitration agreement applying to "all claims" did not cover claims accruing before agreement took effect).

The District Court disregarded the cases cited above on the ground that the Updated Terms lack "express language" that "extend[s]" the forum-selection clause to "claims that accrued before [the forum-selection clause] entered effect." ER-23. That is incorrect. The forum-selection clause applies to "[*a*]*ny* claim, cause of action[,] or dispute," and the integration clause expressly provides that the Updated Terms "*completely* replace *any* prior agreements," necessarily including the Original Terms. ER-83; ER-86 (emphases added). But that also misses the point. The cases cited above stand for the proposition that a broadly worded dispute-resolution provision, like the forum-selection clause here, *presumptively* extends to claims that accrued before the provision took effect. There is thus no need for other "express language."

The District Court also dismissed these cases because they did not "deal[] with a situation" involving "two contracts." ER-23. But none of these opinions tied the outcome to the fact that there was only one contract. And, in fact, California courts have applied the rule that a broadly worded dispute-resolution provision applies retroactively in the two-contract context. *Heinz* is one such case. There the state court examined the authority cited above and correctly concluded that the forum-selection clause in the Updated Terms applies "retroactively." 2024 WL 5418632, at *3. Indeed, *Heinz* involved an actually retroactive application of the Updated Terms, because the claimant there had "initiated the dispute on or around July 10, 2023"—weeks *before* the

33

Updated Terms took effect. *Id.* at *1. Here, by contrast, the dispute arose no earlier than December 2023—months *after* the Updated Terms took effect. *Supra* pp. 8–9. In all events, *Heinz* shows that the forum-selection clause in the Updated Terms applies regardless of when the dispute here arose. *See id.*; *see also Colachis v. Griswold*, 2008 WL 5395682, at *3 (Cal. Ct. App. Dec. 29, 2008) (holding that "[a] broad arbitration clause in a subsequent agreement between [the] parties" governed "disputes arising under an earlier contract"); *id.* (collecting similar cases from other jurisdictions).

In sum, it is clear that under California law a subsequent contract supersedes a prior one, particularly where it contains an integration clause. It is equally clear that under California law a broadly worded dispute-resolution provision presumptively applies to claims regardless of when they accrued. Putting these pieces together, when the dispute here arose, the Original Terms were for all intents and purposes null and void. The Updated Terms were the only ones that existed. And the forum-selection clause in the Updated Terms applies regardless of when the claims accrued.

### C. Edwards's Remaining Arguments Fail.

It is worth briefly addressing various arguments that Edwards made below but that the District Court did not reach. Those arguments are also meritless.

Edwards argued below that D.B. could not have assented to the Updated Terms because she was "twelve years old at the time" and "would not have understood" the Updated Terms "even if she had reviewed them." ER-99–100 (¶¶ 39, 42). That argument actually undermines Edwards's demand for arbitration. If Edwards is correct

34

that D.B. could not have assented to the Updated Terms in 2023 when she was twelve years old, then D.B. certainly could not have assented to the Original Terms in 2019 when, as Edwards says, "she was just eight years old," ER-88 (¶ 1). And if D.B. could not have assented to the Original Terms, then there is no basis for ordering arbitration here, because the Original Terms are the source of the arbitration agreement. *See* ER-198 (Edwards asserting that "D.B. and TikTok entered into a valid and enforceable arbitration agreement under the terms of the 2019 Agreement").

Nor can Edwards rely on unconscionability. Edwards suggested below that the Updated Terms are "unconscionable … given D.B.'s minority status and … inability … to meaningfully review or understand" them. ER-193. Putting aside the undeveloped and inflammatory argument about "minority status," there is no unconscionability under California law unless the contract "shocks the conscience," *Keebaugh v. Warner Bros. Ent. Inc.*, 100 F.4th 1005, 1023 (9th Cir. 2024), and nothing shocks the conscience about moving dispute resolution out of arbitration and back into the court system. Indeed, Edwards never identified *any case* from *any jurisdiction* that supports that counterintuitive view. *See* ER-205–09. And, again, if Edwards's argument here is ultimately that D.B. is not bound by the Updated Terms because she could not understand and assent to them, it follows that she could not understand and assent to the Original Terms—and thus there is no basis for ordering arbitration.

Finally, Edwards finds no support in "the implied covenant of good faith and fair dealing," and she cannot "disaffirm[]" the forum-selection clause. ER-204–05; ER-

35

209. The California Supreme Court has held that "conduct can never violate [the] implied covenant of good faith and fair dealing" if it "was expressly permitted by the [agreement] and was clearly within the parties' reasonable expectations." *Carma Devs. (Cal.), Inc. v. Marathon Dev. Cal., Inc.*, 2 Cal. 4th 342, 376 (1992). That is the situation here; the Original Terms expressly permitted TTI to "amend" the agreement "from time to time" while noting that "continued access or use of the [app] … constitutes … acceptance." ER-118. Additionally, "it is a longstanding and general rule of California law that a party cannot apply to his own use that part of the transaction which may bring to him a benefit, and repudiate the other, which may not be to his interest to fulfill." *C.M.D. ex rel. De Young v. Facebook, Inc.*, 621 F. App'x 488, 489 (9th Cir. 2015) (citation omitted). Edwards thus cannot invoke her preferred provisions of the Original Terms and Updated Terms while disaffirming all others. *See id.*; *see also supra* n.9.

## CONCLUSION

The Court should reverse the order granting the petition to compel arbitration.

December 3, 2025                    Respectfully submitted,


                                   s/ *Noel J. Francisco*

Anthony J Weibell                  Noel J. Francisco
MAYER BROWN LLC                    David K. Suska
3000 El Camino Real                JONES DAY
Two Palo Alto Square               51 Louisiana Avenue, N.W.
Palo Alto, CA 94306-2112           Washington, D.C. 20001-2113
(650) 331-2000                     (202) 879-3939
aweibell@mayerbrown.com            njfrancisco@jonesday.com
                                   dsuska@jonesday.com


*Counsel for Respondent-Appellant TikTok Inc.*

37

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

## Form 8. Certificate of Compliance for Briefs

*Instructions for this form:* http://www.ca9.uscourts.gov/forms/form08instructions.pdf

**9th Cir. Case Number(s)** 25-5868

I am the attorney or self-represented party.

**This brief contains** 9,993 **words, including** 194 words manually counted in any visual images, and excluding the items exempted by FRAP 32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief *(select only one)*:

◉ complies with the word limit of Cir. R. 32-1.

◯ is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

◯ is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

◯ is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

◯ complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:

☐ it is a joint brief submitted by separately represented parties.
☐ a party or parties are filing a single brief in response to multiple briefs.
☐ a party or parties are filing a single brief in response to a longer joint brief.

◯ complies with the length limit designated by court order dated [                ].

◯ is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** s/ Noel J. Francisco   **Date** 12/03/2025

*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at forms@ca9.uscourts.gov*

**Form 8**                                                                 *Rev. 12/01/22*

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing document was filed with the Clerk of Court for the United States Court of Appeals for the Ninth Circuit on December 3, 2025 by using ACMS. I hereby certify that all participants in the case are ACMS users and that service will be accomplished by ACMS.

December 3, 2025                                        *s/ Noel J. Francisco*