No. 25-5868

# United States Court of Appeals for the Ninth Circuit

BRITTANY EDWARDS, on behalf of D.B. Barlow,

*Petitioner-Appellee,*

– v. –

TIKTOK INC.,

*Respondent-Appellant.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTICT OF CALIFORNIA

## BRIEF FOR PETITIONER-APPELLEE

EDWARD NORMAND
KYLE W. ROCHE
ALEX POTTER
PATRICK J. WOODS
FREEDMAN NORMAND FRIEDLAND LLP
155 E. 44TH STREET, SUITE 915
NEW YORK, NY 10017
*(646) 494-2900*

*Attorneys for Petitioner-Appellee*

CP COUNSEL PRESS    (800) 4-APPEAL • (715492)

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................. iii

INTRODUCTION .............................................................................................. 1

ISSUES PRESENTED ........................................................................................ 7

STATEMENT OF THE CASE ............................................................................ 8

I.      FACTUAL BACKGROUND .................................................................... 8

      A.    TikTok's Terms of Service ............................................................ 8

      B.    D.B.'s Use of TikTok ................................................................... 10

      C.    Edwards Seeks to Arbitrate with TikTok .................................... 10

II.     PROCEDURAL HISTORY .................................................................... 11

SUMMARY OF THE ARGUMENT ................................................................. 12

ARGUMENT ................................................................................................... 16

I.      THE COURT LACKS JURISDICTION .............................................. 16

II.    THE DISTRICT COURT CORRECTLY GRANTED THE PETITION TO COMPEL ARBITRATION ................................................................ 23

      A.    The Updated Terms Contain No Clear and Specific Waiver of the Severable Arbitration Clause in the Original Terms ..................... 24

      B.    Petitioner's Claims Accrued Under the Original Terms ..................... 28

      C.    On Its Face, the Forum-Selection Clause Applies Exclusively to Claims Arising Under the Updated Terms ........................................... 30

      D.    TikTok's Preferred Authority Is Unavailing ..................................... 31

          1.    *Suski Does Not Support TikTok's Position* ............................... 31

          2.    *Goldman Sachs Does Not Support TikTok's Position* .............. 35

3. *Franco, Salgado, and Heinz Do Not Support TikTok's Position* ..........................................................37

E. Under the Principle of *Contra Proferentem*, the Court Construes Any Ambiguity in Favor of Edwards.....................................41

III. THE COURT MAY AFFIRM ON ALTERNATIVE GROUNDS ..............44

A. The Updated Terms Violated the Implied Covenant .........................44

B. The Updated Terms Are Unconscionable ...........................................46

C. Petitioner Has Disaffirmed the Updated Terms of Service on Behalf of D.B. ....................................................................................49

CONCLUSION ...................................................................................................52

# TABLE OF AUTHORITIES

**Cases**

*24 Hour Fitness, Inc. v. Superior Ct.*,
  66 Cal. App. 4th 1199 (1998) ................................................................41

*Airs Int'l, Inc. v. Perfect Scents Distributions, Ltd.*,
  902 F. Supp. 1141 (N.D. Cal. 1995) .......................................................49

*Antonetti v. Activision Blizzard, Inc.*,
  764 F. Supp. 3d 1309 (N.D. Ga. 2025) ...................................................51

*Applied Energetics, Inc. v. NewOak Cap. Mkts., LLC*,
  645 F.3d 522 (2d Cir. 2011) ...................................................................33

*Atel Fin. Corp. v. Quaker Coal Co.*,
  321 F.3d 924 (9th Cir. 2003) ........................................................... 15, 44

*Baltazar v. Forever 21, Inc.*,
  62 Cal. 4th 1237 (2016) ..........................................................................47

*Berkery v. Cross Country Bank*,
  256 F. Supp. 2d 359 (E.D. Pa. 2003) ......................................................27

*Carma Devs. (Cal.), Inc. v. Marathon Dev. Cal., Inc.*,
  2 Cal. 4th 342 (1992) ....................................................................... 45, 46

*Carreyrou v. Anthropic PBC et al.*,
  No. 25-cv-10897 (N.D. Cal. filed Dec. 22, 2025) ....................................4

*Carroll Shelby Licensing, Inc. v. Halicki*,
  138 F.4th 1178 (9th Cir. 2025) ...............................................................31

*Celli v. Sports Car Club of Am., Inc.*,
  29 Cal. App. 3d 511 (1972) .....................................................................49

*CNH Indus. N.V. v. Reese*,
  583 U.S. 133 (2018).......................................................................... 34, 39

iii

*Cobb v. Ironwood Country Club,*
233 Cal. App. 4th 960 (2015) ........................................................ 45, 46

*Coinbase, Inc. v. Suski,*
602 U.S. 143 (2024)............................................................................11

*Coughenour v. Del Taco, LLC,*
57 Cal. App. 5th 740 (2020) .............................................................49

*Courtright v. Epic Games, Inc.,*
766 F. Supp. 3d 873 (W.D. Mo. 2025)...............................................51

*Cvejic v. Skyview Capital, LLC,*
92 Cal. App. 5th 1073 (2023) ...........................................................22

*Dees v. Billy,*
394 F.3d 1290 (9th Cir. 2005) ..........................................................19

*Drake Bakeries, Inc. v.*
 *Loc. 50, Am. Bakery & Confectionery Workers Int'l, AFL-CIO,*
370 U.S. 254 (1962)...........................................................................25

*Franco v. Greystone Ridge Condominium,*
93 Cal. App. 5th 221 (2019) ...................................................... passim

*Goldman, Sachs & Co. v. City of Reno,*
747 F.3d 733 (9th Cir. 2014) ..................................................... passim

*Green Tree Financial Corp.-Alabama v. Randolph,*
531 U.S. 79 (2000)............................................................................21

*Hall St. Assocs. v. Mattel, Inc.,*
552 U.S. 576 (2008)..........................................................................28

*Heinz v. TikTok, Inc.,*
2024 WL 5418632 (Cal. Super. Oct. 2, 2024)..................................40

*Henry Schein, Inc. v. Archer and White Sales, Inc.,*
586 U.S. 63 (2019)............................................................................27

iv

*Homestake Lead Co. of Mo. v. Doe Run Res. Corp.*,
   282 F. Supp. 2d 1131 (N.D. Cal. 2003) ........................................................ 26, 27

*In re ETM Entmt. Network, Inc.*,
   154 F. App'x 4 (9th Cir. 2005) ................................................................... 34, 39

*In re TikTok, Inc., Consumer Priv. Litig.*,
   565 F. Supp. 3d 1076 (N.D. Ill. 2021) ...............................................................5

*In re TikTok, Inc., Consumer Priv. Litig.*,
   MDL No. 2948 (N.D. Ill.) ...................................................................................5

*Ins. Co. of N. Am. v. Fed. Exp. Corp.*,
   189 F.3d 914 (9th Cir. 1999) ...........................................................................50

*Int'l Alliance of Theatrical Stage Employees v.
   InSync Show Productions, Inc.*,
   801 F.3d 1033 (9th Cir. 2015) ..................................................................... 17, 18

*J.R. v. Elec. Arts Inc.*,
   98 Cal. App. 5th 1107 (2024) ...........................................................................50

*Keebaugh v. Warner Bros. Entmt. Inc.*,
   100 F.4th 1005 (9th Cir. 2024) .........................................................................47

*Lamps Plus, Inc. v. Varela*,
   587 U.S.176 (2019) ..................................................................................... 21, 42

*Litton Fin. Printing Div. v. NLRB*,
   501 U.S. 190 (1991) ........................................................................................25

*Loomis v. Cornish*,
   836 F.3d 991 (9th Cir. 2016) ...........................................................................28

*Magno v. The Coll. Network, Inc.*,
   1 Cal. App. 5th 277 (2016) ..............................................................................48

*Maine Cmty. Health Options v. Albertsons Cos.*,
   993 F.3d 720 (9th Cir. 2021) ...........................................................................22

v

*Mastrobuono v. Shearson Lehman Hutton, Inc.*,
514 U.S. 52 (1995) ................................................................. 41, 42

*Mohamed v. Uber Techs., Inc.*,
848 F.3d 1201 (9th Cir. 2016) ............................................... 34

*Morgan v. Sundance Inc.*,
591 U.S. 411 (2022) ............................................................... 27

*Nghiem v. NEC Elec., Inc.*,
25 F.3d 1437 (9th Cir. 2015) ................................................ 18

*Pambakian v. Blatt*,
859 F. App'x 808 (9th Cir. 2021) .......................................... 39

*Peleg v. Neiman Marcus Grp.*,
204 Cal. App. 4th 1425 (2012) .............................................. 45

*Porkorny v. Quixtar, Inc.*,
601 F.3d 987 (9th Cir. 2010) ................................................ 48

*Prima Paint Corp. v. Flood & Conklin Mfg. Co.*,
388 U.S. 395 (1967) .............................................................. 25, 27

*Rent-A-Center, West, Inc. v. Jackson*,
561 U.S. 63 (2010) ............................................................... 24, 25

*Ry. Lab. Execs.' Ass'n v. S. Pac. Transp. Co.*,
7 F.3d 902 (9th Cir. 1993) .................................................... 20

*Salgado v. Carrows Restaurants, Inc.*,
33 Cal. App. 5th 356 (2019) ................................................. passim

*Scollan v. Gov't Emp. Ins. Co.*,
222 Cal. App. 2d 181 (1963) ................................................ 49

*Shivkov v. Artex Risk Sols., Inc.*,
974 F.3d 1051 (9th Cir. 2020) .............................................. 26

*Smith v. Spizzirri*,
601 U.S. 472 (2024) .............................................................. passim

vi

*Suski v. Coinbase, Inc.*,
55 F.4th 1227 (9th Cir. 2022) ..................................................... passim

*Suski v. Coinbase, Inc.*,
No. 22-15209 (9th Cir.) ..............................................................32

*T.K. v. Adobe Sys. Inc.*,
2018 WL 1812200 (N.D. Cal. Apr. 17, 2018)...................................50

*Valve Corp. v. Abbruzzese*,
2025 WL 1397057 (W.D. Wash. May 14, 2025) ..............................6

*Van Dusen v. Swift Transp. Co.*,
830 F.3d 893 (9th Cir. 2016) ......................................................20

*Wallrich v. Samsung Electronics America, Inc.*,
106 F.4th 609 (7th Cir. 2024) ................................................ 19, 20

*WorldCrisa Corp. v. Armstrong*,
129 F.3d 71 (2d Cir. 1997) .........................................................27

*Zhuang v. EMD Performance Materials Corp.*,
2023 WL 4578793 (3d Cir. July 18, 2023).....................................19

**Statutes**

9 U.S.C. § 16(a)(3)....................................................................16

9 U.S.C. § 4 ............................................................................11

9 U.S.C. § 401 .........................................................................29

Cal. Code Civ. Proc. § 1281.98 ...................................................22

**Other Authorities**

*Restatement (Second) of Contracts* § 279 cmt. b (Am. Law Inst. 1979).................50

Sara Randazzo, *Amazon Faced 75,000 Arbitration Demands. Now It Says:
Fine, Sue Us*, WALL STREET JOURNAL (June 1, 2021)...........................6

## <u>INTRODUCTION</u>

The district court correctly granted Petitioner-Appellee Brittany Edwards' petition to compel arbitration. This appeal is the latest chapter in a multiyear saga of forum-shopping by Respondent-Appellant TikTok, Inc. ("TikTok"), one of the most successful and influential social media companies in the world. TikTok first required users to resolve disputes solely through arbitration, even specifying in the original terms of service that the arbitration clause survives any termination of the terms. Yet facing increased scrutiny of its platform's impact on the mental health of young users, and on its data-collection and privacy practices, TikTok then determined that litigation would be less costly than arbitration and changed course.

TikTok thus decided in 2023 to impose updated terms of service that removed the arbitration clause, substituted an exclusive judicial forum for resolution of disputes under the updated terms, and imposed a one-year limitations period. The updated terms did not mention retroactivity, nor did they address the arbitration survivability provision in the original terms. TikTok nevertheless contends that the updated terms apply retroactively, precluding arbitration of claims that accrued under the original terms and effectively waiving accrued claims older than a year. The district court properly rejected these arguments, holding that the forum-selection clause does not apply to claims that accrued under the original terms.

As a threshold matter, the Court lacks jurisdiction to hear TikTok's appeal. A motion to compel arbitration is not immediately appealable unless it disposes of *all* issues in a case. Edwards' petition principally sought to compel arbitration, but also alleged that TikTok breached the arbitration agreement by failing to pay its share of fees to the AAA, which Edwards was forced to pay to prevent the AAA from closing the arbitration. When it granted the petition to compel, the district court did not resolve that request for relief (which is committed to the arbitrator in the first instance), but instead stayed the case pending the outcome of the arbitration and ordered the parties to advise it, following the arbitration, whether further relief is necessary. The stay order forecloses this appeal and reflects the supervisory role played by district courts in aid of arbitration after arbitration is compelled.

TikTok argues instead for an asymmetrical rule of appealability that arbitrarily privileges arbitration defendants: if a plaintiff brings substantive claims in court and arbitration is compelled, that plaintiff has no immediate right of appeal; but if a plaintiff seeks to compel arbitration against an unwilling defendant and arbitration is compelled, that defendant may appeal immediately. The better course is for this Court to recognize that the district court's stay requires TikTok to wait until arbitration is over to appeal—just as any unwilling arbitration plaintiff would be required to do. The Court therefore should dismiss the appeal.

As to the principal bases for affirmance (if the Court were to determine that jurisdiction exists), under well-settled law, on behalf of her daughter, Edwards properly seeks to arbitrate a dispute with TikTok arising from events that took place when TikTok's original terms of service and ironclad arbitration clause were in effect. Under the plain language of the terms of service,

- Edwards' claims indisputably fall within the scope of the arbitration clause in the original terms of service, which is a "broad" clause under the law and which specifies that it survives any termination of the terms.

- The updated terms of service specify an exclusive judicial forum for the resolution of claims under the updated terms—not to any *other* terms.

- Although the updated terms may have terminated the original terms, the arbitration clause in the original terms expressly survives any such termination. The updated terms do not say otherwise.

- The updated terms do not retroactively encompass (let alone impose any retroactive waiver of) claims that had accrued under the original terms.

All of this follows from a plain-language reading of these terms of service. If more were needed, TikTok's various arguments that the updated terms retroactively encompass (and effectively waive) claims that had accrued under the original terms would render the updated terms unconscionable and violate the implied covenant of

3

good faith and fair dealing. In addition, as state law permits, Edwards has expressly disaffirmed the updated terms on her daughter's behalf.

As to TikTok's *ad hominem* attacks on appeal, *see, e.g.*, Br. at 2, Edwards properly seeks to arbitrate because her dispute—arising as it does from TikTok's tortious impact on her daughter's mental health—is intensely private and warrants the confidentiality of an arbitral forum.[1] Given the company's history of mistreating its users, it is no surprise that TikTok resorts to speculation and innuendo about Edwards' supposed motives. TikTok's assertion of a hold-up strategy is not only wrong on the facts, but also lacking in self-awareness. The company cannot seriously be asking the Court to believe that TikTok does *not* seek financial advantage through its transparent litigation strategy here. TikTok's acknowledgement of its prior settlements in arbitration are not probative of whether claimants have leveraged

---

[1] TikTok also references (*see* Br. at 9 & n.3) concerns Judge Alsup raised in an unrelated matter regarding whether opt-outs from the *Bartz v. Anthropic* class action settlement represented by Freedman Normand Friedland LLP, Stris & Maher LLP, and ClaimsHero LLC, would in fact file individual actions in court on behalf of authors after they opted out of the settlement. Judge Alsup's concerns were unfounded, as counsel explained to Judge Alsup at the time. Counsel has begun filing those actions, including on behalf of Pulitzer Prize-winning authors. *See Carreyrou v. Anthropic PBC et al.*, No. 25-cv-10897 (N.D. Cal. filed Dec. 22, 2025); *Bloomberg Law*, https://news.bloomberglaw.com/tech-and-telecom-law/openai-anthropic-xai-hit-with-copyright-lawsuit-from-writers.

"high costs of mass arbitration," Br. at 2, but rather of how *TikTok* has leveraged the *lower costs* of settling with plaintiffs in state and federal court.

TikTok's decision to remove the arbitration clause from its terms of service is a clear reflection of that incentive structure. When TikTok faced consumer privacy multidistrict litigation, it agreed to *waive* its arbitration agreement in order to settle with the plaintiff class, having insisted that the "class members are subject to the class action waiver and arbitration agreements." *In re TikTok, Inc., Consumer Priv. Litig.*, 565 F. Supp. 3d 1076, 1089 (N.D. Ill. 2021). TikTok maintained the following: "Given the prohibitive time and expense of undertaking millions of individual arbitrations, Plaintiffs would likely receive nothing if Defendants succeeded on this front." *Id.* As it turned out, however, those class members who opted out and proceeded in arbitration received average settlements of $1,250 each compared to the average $27.19 for each settling MDL class member. *See In re TikTok, Inc., Consumer Priv. Litig.*, MDL No. 2948, Dkt. 226 at 6, Dkt. 231 at 2 (N.D. Ill.). TikTok thus settled for a pittance with the MDL class by threatening to enforce an arbitration clause that, it now says, did not actually apply. When it turned out that arbitration was more costly for TikTok, TikTok changed its strategy.[2] In

---

[2] Other companies have employed a similar strategy. Amazon fled mandatory arbitration after receiving tens of thousands of arbitration demands arising from privacy concerns over its Echo devices. Sara Randazzo, *Amazon Faced 75,000*

short, contrary to TikTok's assertions, *see* Br. at 2, the only "business plan" at work here is TikTok's own race to the bottom.

The Court need not rely on this context to affirm on the basis of the district court's sound application of the plain contractual language, but it informs the equities of TikTok's conduct and the alternative bases for affirmance. The doctrines of unconscionability and the implied covenant of good faith and fair dealing exist because public policy recognizes that contractual arrangements often are *not* the product of arm's length negotiations between parties with equal information and bargaining power. State law additionally recognizes a right of disaffirmance to protect minors from improvident contracts. TikTok stands here as the quintessential profit-maximizing entity with disproportionate bargaining power seeking to construe its contracts in the manner that will reduce its prospective liability at any given moment, to the particular detriment of minors.

The controlling legal principles are straightforward. The FAA instructs that arbitration agreements have force and effect beyond the contracts that contain them.

---

*Arbitration Demands. Now It Says: Fine, Sue Us*, WALL STREET JOURNAL (June 1, 2021). Valve, the creator of the gaming platform Steam, unilaterally amended its subscriber agreement to replace a mandatory arbitration agreement with a mandatory litigation agreement funneling users to a pending class action. Asserting that the amendment applied even to pending disputes, Valve has sought to enjoin hundreds of individuals from continuing their pending arbitrations. *See Valve Corp. v. Abbruzzese*, 2025 WL 1397057, at *1 (W.D. Wash. May 14, 2025).

As a result—and particularly where, as here, an arbitration clause *specifies* that it will survive any termination of its container contract—revoking such a clause requires more than simply updating the container contract to remove any mention of arbitration and substitute a judicial forum-selection clause. TikTok failed to clearly revoke the arbitration agreement in its 2019 terms of service when it removed that agreement from its updated terms of service in 2023, without any mention of retroactivity or reference to the arbitration survivability clause in the original terms. And enforcing the updated terms of service retroactively, as TikTok requests, would work an unconscionable result, violate the implied covenant of good faith and fair dealing, and vitiate Edwards' express disaffirmance of the updated terms on D.B.'s behalf. The Court should affirm the district court's order compelling arbitration.

## **ISSUES PRESENTED**

1.    Whether this Court has jurisdiction over this appeal from an order compelling arbitration and staying the case pending the completion of arbitration.

2.    Whether this Court should affirm the order compelling arbitration of claims that accrued at the time the parties' arbitration agreement was in effect, where the arbitration agreement stated that it would survive any termination of its container contract, and the subsequent agreement containing a forum-selection clause did not clearly state that the arbitration agreement was abrogated.

7

**3.** Whether this Court should affirm the order compelling arbitration on the alternative grounds that the subsequent agreement containing a forum-selection clause violated the implied covenant of good faith and fair dealing, would be unconscionable in its application, and was disaffirmed by Petitioner.

## STATEMENT OF THE CASE

### I. FACTUAL BACKGROUND

#### A. TikTok's Terms of Service

TikTok launched in the United States in 2018 and quickly grew into one of the country's most widely used social media applications, especially among minors. ER-93, ¶ 18. Petitioner Brittany Edwards' minor daughter, D.B., first created a TikTok account in 2019 when she was eight years old. ER-88, ¶ 1. And like all users prior to mid-2023, she was bound by TikTok's 2019 User Agreement (the "Original Terms"). ER-94, ¶ 20. The Original Terms required that any "dispute, controversy or claim . . . relating in any way to your use of TikTok's services and/or products, including the Services, or relating in any way to the communications between you and TikTok or any other user of the services" be resolved through arbitration administered by the American Arbitration Association (AAA). ER-143-44. The Original Terms stated: "This arbitration provision will survive any termination of these Terms." ER-144.

In 2023, TikTok began to face heightened public scrutiny and legal attention arising from concerns about the platform's impact on children's and adolescents' mental health, as well as allegations that the platform was collecting extensive user data through hidden tracking technologies. ER-94-95, ¶¶ 23-26. Amid this increased scrutiny, TikTok implemented an amended User Agreement (the "Updated Terms") in July 2023. ER-95-96, ¶¶ 27-29; ER-168-69. The Updated Terms eliminated the arbitration clause, replaced it with a mandatory forum-selection provision requiring all claims to be brought exclusively in California courts, adopted a California choice-of-law provision, and purported to impose a one-year limitations period on all claims arising under the Updated Terms. ER-169.

The Updated Terms apply to: "Any claim, cause of action or dispute, arising out of or relating to these Terms." ER-169. This phrasing stands in sharp contrast to the arbitration clause in the Original Terms, which applied not just to disputes arising from or relating to those terms, but to disputes "relating in any way to your use of TikTok's services and/or products" or "relating in any way to the communications between you and TikTok or any other user of the services." ER-143-44. The Updated Terms make no mention of the arbitration clause in the Original Terms, and they do not reference any retroactive application.

9

**B.      D.B.'s Use of TikTok**

D.B. created and used multiple TikTok accounts. Edwards initially permitted her daughter to use the app, believing it to be safe. She later observed, however, that D.B.'s mental health deteriorated significantly, culminating in a suicide-related TikTok post in 2022 and involving exposure to harmful content, including content promoting vaping. ER-96-97, ¶¶ 30-34. Despite Edwards' efforts to restrict her daughter's access, D.B. continued to use TikTok, and Edwards ultimately concluded that TikTok's design and conduct had caused severe and ongoing harm to D.B.'s mental health. ER-97-98, 100, ¶¶ 35-36, 43.

TikTok contends that D.B. legally assented to the Updated Terms via an in-app pop-up. ER-98-99, ¶¶ 37-38. Edwards disputes that contention, noting that D.B. was twelve years old at the time, incapable of understanding such terms, and lacked the legally required consent of a parent or guardian. ER-99-100, ¶¶ 39, 42. Edwards never reviewed, agreed to, or authorized acceptance of the Updated terms and has expressly disaffirmed them on D.B.'s behalf. ER-100-01, ¶¶ 43-47.

**C.      Edwards Seeks to Arbitrate with TikTok**

In December 2023, Edwards provided notice of her intent to arbitrate claims arising before July 2023 pursuant to the arbitration clause in the Original Terms; and in March 2024, she filed a demand against TikTok with the AAA. ER-102, ¶¶ 48, 50. The AAA determined that Edwards satisfied the filing requirements and directed

TikTok to pay the required filing fee. ER-194, ¶ 55. TikTok refused to do so, declining to meaningfully participate in the arbitration and forcing Edwards to advance TikTok's share of fees to continue the proceeding. ER-102-04, ¶¶ 51, 56.

TikTok asserted to the AAA that the Original Terms were "void" and "superseded" by the Updated Terms, which TikTok claimed "replaced arbitration with an exclusive venue provision requiring that all disputes (regardless of when they arose)" be brought in the state or federal courts of Los Angeles County. ER-174. Neither this language—"regardless of when they arose"—nor anything like it appears in the Updated Terms; this is simply TikTok's post-hoc gloss. The fact that TikTok felt compelled to add such language in its AAA submission underscores that the company had *not* used the phrasing in its contract.

Considering *Coinbase, Inc. v. Suski*, 602 U.S. 143 (2024), the AAA placed the arbitration in abeyance pending judicial resolution, stating that such resolution of whether the parties agreed to arbitrate was required. ER-183-85. TikTok's refusal to comply with its contractual obligations has thus delayed Edwards' effort to arbitrate her claims for years now.

## II.    PROCEDURAL HISTORY

Edwards commenced this proceeding by filing a Verified Petition to Compel Arbitration pursuant to Section 4 of the Federal Arbitration Act, 9 U.S.C. § 4. ER-87-107. TikTok opposed the Petition, insisting that the forum-selection clause in the

11

Updated Terms superseded the Original Terms even as to claims that would have been channeled to arbitration when they accrued.

The district court granted the petition, *see* ER-18-25, holding that the Original Terms and Updated Terms could co-exist: the claims that Edwards sought to arbitrate, which accrued when the Original Terms were in force, could be sent to arbitration, whereas any claims that accrued after the Updated Terms took effect would be governed by the forum-selection clause. ER-24. The district court stayed the case "pending the outcome of any arbitration," with instructions for the parties to jointly advise the court of the conclusion of the arbitration and request that the Court "dismiss [the] matter or take other action consistent with the resolution of the arbitration." ER-24-25.

TikTok timely appealed. ER-4-5. Edwards moved to dismiss the appeal for want of appellate jurisdiction, Dkt. 13.1, which motion was denied without prejudice to renewal of the arguments in support thereof in the answering brief, Dkt. 19.1.

## SUMMARY OF THE ARGUMENT

First, this Court lacks jurisdiction over this appeal because the district court's order compelled arbitration and stayed the action, consistent with the district court's ongoing supervisory role over the arbitration it compelled. Under the logic of *Smith v. Spizzirri*, 601 U.S. 472 (2024), an order compelling arbitration and staying a case is interlocutory and unappealable absent certification, reflecting an understanding

12

that after compelling arbitration, district courts will continue to oversee and assist the arbitral process (*e.g.*, by appointing arbitrators, enforcing subpoenas, and confirming or vacating awards). That ongoing supervisory role defeats the finality that TikTok claims is present here. TikTok's attempt to revive a pre-*Spizzirri* view of finality is both formalistic and asymmetrical: it would privilege arbitration defendants like TikTok who resist arbitration with an immediate appeal while denying the same to arbitration plaintiffs. If TikTok means to say there was nothing left for the district court to do below, that argument fails on its own terms, because the district court did not resolve Edwards' claim arising from TikTok's refusal to pay its AAA fees, an issue presumptively left to the arbitrator in the first instance. The Court therefore should dismiss the appeal.

Second, as to the principal bases for affirmance (if the Court determines it has jurisdiction), the district court correctly compelled arbitration because TikTok never revoked the arbitration clause in the Original Terms, which clause is a severable, surviving contract. That agreement survives the termination of the Original Terms—its container contract—both as a matter of the severability of arbitration agreements and because TikTok stated that the arbitration agreement would survive "any termination" of the terms. For the first time on appeal, TikTok argues that the parties' "dispute" arose only after the Updated Terms took effect. The argument is waived and wrong on the merits as well—the question is when Edwards' claims accrued.

13

TikTok's arguments rely exclusively on caselaw interpreting the undefined term "dispute" in an irrelevant and inapt federal statute. The forum-selection clause in the Updated Terms is narrower and, by its text, applies prospectively to claims "arising out of or relating to these Terms," not to pre-existing claims under the Original Terms. The district court properly harmonized the two contracts, holding that the arbitration agreement governs claims that accrued before the Updated Terms took effect, and the forum-selection clause governs claims accruing thereafter.

TikTok principally relies on the same authorities it did below: *Suski v. Coinbase, Inc.*, 55 F.4th 1227 (9th Cir. 2022); *Goldman, Sachs & Co. v. City of Reno*, 747 F.3d 733 (9th Cir. 2014); *Franco v. Greystone Ridge Condominium*, 93 Cal. App. 5th 221 (2019); and *Salgado v. Carrows Restaurants, Inc.*, 33 Cal. App. 5th 356 (2019). They are easily distinguishable, as the district court held, and TikTok's efforts to criticize the district court's reasoning fall flat. Unlike these cases, the facts here involve the interplay between (1) an arbitration agreement with a survivability clause, followed by a forum-selection clause purporting to cover the same subject matter and (2) claims that accrued while the arbitration agreement was in effect but asserted after the forum-selection clause took effect. As the district court correctly held, the plain language of the Original and Updated Terms of Service requires arbitration of claims that accrued under the Original Terms. But if there were any ambiguity in the applicability of the Updated Terms, as a contract of

14

adhesion, the Court must construe any such ambiguities against TikTok as drafter and in favor of arbitration under the doctrine of *contra proferentem*.

Third, the Court may affirm on other "ground[s] supported by the record." *Atel Fin. Corp. v. Quaker Coal Co.*, 321 F.3d 924, 926 (9th Cir. 2003). Any application of the Updated Terms to bar arbitration of the parties' dispute would violate the implied covenant of good faith and fair dealing, their application would be unconscionable, and Edwards disaffirmed the Updated Terms on behalf of her daughter. Under California law, the implied covenant condemns unilateral changes that retroactively impair "accrued or known" claims without clear notice as to how the claims will be impacted, which did not happen here. The Updated Terms did not provide any notice, much less clear notice, that they were purporting to retroactively nullify arbitrability and release accrued claims older than a year.

TikTok's interpretation of the Updated Terms is also both procedurally and substantively unconscionable: procedurally because they are contained in a contract of adhesion, and substantively because they purport to impose on a user base heavy with minors terms that replace a previously agreed arbitral forum with mandatory California litigation and saddle users (but not TikTok) with a shortened limitations period functioning as a retroactive release. And California's strong public policy shielding minors from improvident contracts by allowing disaffirmance permitted Edwards to disaffirm the Updated Terms on her behalf and revive the Original

15

Terms. This public policy is particularly apt here, because D.B.'s putative "assent" to TikTok's Updated Terms was the product of addiction.

## ARGUMENT

## I. THE COURT LACKS JURISDICTION

The Court lacks jurisdiction because the district court's order compelling arbitration and staying the case pending arbitration is interlocutory and therefore not immediately appealable. As the Supreme Court made clear in *Smith v. Spizzirri*, 601 U.S. 472, 478 (2024), such orders reflect Congress's intent that district courts retain an "ongoing," "supervisory role" under the FAA. The district court here did what the FAA and *Spizzirri* contemplate: it compelled arbitration, stayed the action, and retained jurisdiction to oversee and facilitate the arbitral process. *See* ER-24-25. As a result, the order is not final, and this appeal should be dismissed. Section 16(a)(3) of the FAA, which provides that appeals may be taken from "a final decision with respect to an arbitration," 9 U.S.C. § 16(a)(3), cannot bear the weight TikTok places on it because "finality" turns on a practical and flexible inquiry, not formalisms.

TikTok acknowledges the general rule that orders compelling arbitration and staying proceedings are ordinarily interlocutory and unappealable. It argues, however, that this case is an exception because Edwards did not assert substantive claims in the district court, such that upon compelling arbitration, the district court had nothing left to do but enter judgment, rendering the order final. As a threshold

16

matter, the district court did not enter final judgment, but rather stayed the case pending the conclusion of arbitration. ER-24-25. Under *Spizzirri*, what matters is the effect of the order and the role the district court continues to play after compelling arbitration. Here, the district court retained jurisdiction to supervise the arbitration, issue ancillary orders, ultimately enforce or confirm any arbitral award, and—given TikTok's prior refusal to participate in the arbitration—ensure compliance with its orders. That ongoing role makes the order interlocutory.

As an independent matter, the order also is unappealable because Edwards did in fact raise a substantive issue before the district court: TikTok's liability for the arbitration fees Petitioner was forced to advance after TikTok breached the arbitration agreement by refusing to pay its share. That claim sought affirmative relief and was not resolved by the district court's order. Even under TikTok's approach to finality, that issue defeats appellate jurisdiction.

TikTok principally relies on the assertion that the district court's order was "final" because it left "nothing more to do" but enter judgment. *See* Br. at 19. The district court's order, as noted, makes clear that the court did have "more to do" than enter judgment, and no judgment was entered. In addition, the cited proposition traces to a pre-*Spizzirri* decision of this Court, *Int'l Alliance of Theatrical Stage Employees v. InSync Show Productions, Inc.* ("*IATSE*"), 801 F.3d 1033, 1040 (9th Cir. 2015). But *IATSE* is no longer controlling because *Spizzirri* fatally undermined

17

its underlying premise, and under Ninth Circuit precedent, a prior decision loses binding force when a later Supreme Court opinion "undermines the reasoning" upon which it rested. *Nghiem v. NEC Elec., Inc.*, 25 F.3d 1437, 1441 (9th Cir. 2015). *Spizzirri* does exactly that by rejecting the notion that a district court's role largely ends once it compels arbitration.

In *IATSE*, this Court held that when a case is initiated solely by a petition to compel arbitration (without accompanying substantive claims), an order granting that petition is final and appealable, because the district court purportedly has nothing left to do. But *Spizzirri* repudiates that vision of judicial inactivity, instead emphasizing that Congress envisioned district courts maintaining an active supervisory role over arbitrations governed by the FAA. *See* 601 U.S. at 478. After compelling arbitration, courts do not simply step aside; they stay the case and remain available to issue orders "to assist parties in arbitration," such as orders "appointing an arbitrator," "enforcing subpoenas," and "facilitating enforcement of arbitral awards." *Id. IATSE* found finality because it concluded that the stay entered by the district court "lacked any legal or practical effect," 801 F.3d at 306, but *Spizzirri* makes clear that a stay to permit the district court's ongoing supervisory role over arbitration does not confer finality.

Consistent with *Spizzirri*, other courts have held that a stay reflects an ongoing judicial role and defeats appellate jurisdiction. The Third Circuit, for example, has

18

reasoned that when a district court stays a case after compelling arbitration, it "maintain[s] an implicit supervisory role over the arbitration," rendering the order nonfinal. *Zhuang v. EMD Performance Materials Corp.*, 2023 WL 4578793, at *1 (3d Cir. July 18, 2023) (quoting *Freeman v. Pittsburgh Glass Works, LLC*, 709 F.3d 240, 248 (3d Cir. 2013)). That framework applies squarely here, as the district court stayed the case and retained jurisdiction.[3] And although TikTok argues that "the putative 'stay' was legally improper," Br. at 18, it did not seek to dissolve the stay before the district court, instead asking this Court for the first time on appeal simply to ignore the stay.

TikTok attempts to cabin *Spizzirri* by arguing, based largely on *Wallrich v. Samsung Electronics America, Inc.*, 106 F.4th 609 (7th Cir. 2024), that *Spizzirri* applies only when arbitration is invoked defensively against substantive claims already before the court. *See* Br. at 17. According to TikTok, when a party files a standalone petition to compel arbitration, finality principles differ. That purported

---

[3] TikTok's contention that the district court's decision to administratively close the case establishes that its decision was final. Not so: an instruction to administratively close a case "is a docket management tool that has no jurisdictional effect." *Dees v. Billy*, 394 F.3d 1290, 1294 (9th Cir. 2005). An "order staying judicial proceedings and compelling arbitration," therefore, "is not appealable even if accompanied by an administrative closing." *Id.* TikTok also claims that any stay here was improper because Petitioner did not request one under Section 3 of the FAA. But Section 3 does not purport to restrict what a district court *may* do; it says what a court *must* do if a party requests a stay.

19

distinction is unpersuasive and inconsistent with Ninth Circuit law. Finality is a "practical," not formalistic, concept. *Van Dusen v. Swift Transp. Co.*, 830 F.3d 893, 896 (9th Cir. 2016). TikTok and *Wallrich* fail to articulate any practical reason why the presence or absence of pleaded claims should affect the nature of the district court's post-arbitration role. Instead, they contemplate an inconsistent, prejudicial approach to finality that privileges only arbitration *defendants*.

As TikTok (and *Wallrich*) would have it, if a plaintiff brings substantive claims and the defendant successfully compels arbitration, that order is not appealable by the plaintiff; but if a plaintiff successfully compels arbitration with a defendant who refused to participate in the arbitration, that defendant may immediately appeal the order. In both cases, the arbitration may proceed without further court intervention, but only in the latter case does the party resisting arbitration have an opportunity to immediately block the arbitration from continuing. The prejudicial effect of this inconsistency is only amplified by the fact that the appealing party is already the one that refused to arbitrate—which is why FAA Section 16 could not sensibly authorize immediate appeal in such cases.

TikTok's other appellate authorities are unavailing. Except for *Wallrich*, none post-dates *Spizzirri*. This Court has declined to rely on appellate decisions that lacked "the benefit of the Supreme Court's reasoning." *Ry. Lab. Execs.' Ass'n v. S. Pac. Transp. Co.*, 7 F.3d 902, 908 (9th Cir. 1993). TikTok's preferred authority was

rendered without the benefit of the Supreme Court's authoritative articulation of the ongoing role that courts play after arbitration is compelled. Accordingly, these cases cannot overcome *Spizzirri*'s clear guidance.

TikTok's reliance on *Green Tree Financial Corp.-Alabama v. Randolph*, 531 U.S. 79 (2000), and *Lamps Plus, Inc. v. Varela*, 587 U.S. 176 (2019), actually undercuts TikTok's argument. In *Green Tree*, the district court compelled arbitration and dismissed the underlying claims with prejudice. The Supreme Court held that the order was final and appealable because dismissal left nothing pending in the district court, but the Court emphasized that had the district court entered a stay instead of dismissing the action, the order would not have been appealable. *See* 531 U.S. at 87 n.2. *Lamps Plus* made the same point, explaining that a stay would have barred appellate review under 9 U.S.C. § 16(b)(1). *See* 587 U.S. at 181 n.1. Neither case suggests that appealability turns on whether substantive claims were asserted; the dispositive inquiry is whether anything remains pending before the district court. After *Spizzirri*, the answer here is yes: the court retains its supervisory role.

The FAA itself supports this understanding of a district court's role. It authorizes district courts to act in aid of arbitration by appointing arbitrators, enforcing arbitration subpoenas, and confirming, enforcing, or vacating awards. These powers do not depend on the existence of substantive claims in the district court. Courts regularly exercise them in original proceedings where the merits of the

parties' disputes are never litigated in court. *See, e.g.*, *Maine Cmty. Health Options v. Albertsons Cos.*, 993 F.3d 720, 722 (9th Cir. 2021). Accordingly, even in cases initiated solely to enforce or support arbitration, district courts remain actively involved. Because the arbitration between Edwards and TikTok is ongoing (and has been stayed given the pendency of TikTok's appeal), the district court has not completed its work. The stay thus confirms the interlocutory nature of the order.

Finally, as noted, TikTok's jurisdictional argument rests on a mischaracterization of the record—namely, that arbitrability was the only issue before the district court. Petitioner sought substantive relief based on TikTok's breach of the arbitration agreement, alleging that TikTok deliberately refused to pay its required share of arbitration fees, forcing her to advance those fees to prevent the AAA from terminating the proceedings. That refusal, she alleged, was a material breach of the agreement and part of a strategy to exert financial pressure on her.

The petition requested an order holding TikTok liable for those fees and costs, including amounts Edwards had already paid. Under California law, a drafting party's failure to timely pay required arbitration fees constitutes a material breach of an arbitration agreement. *See* Cal. Code Civ. Proc. § 1281.98; *see also, e.g.*, *Cvejic v. Skyview Capital, LLC*, 92 Cal. App. 5th 1073, 1076 (2023). This claim, which may entitle Petitioner to additional "fees, costs, and sanctions," *id.*, sought substantive relief and addressed conduct that had already caused harm. In issuing its

order compelling arbitration, the district court implicitly determined that the question of material breach, like Edwards' underlying statutory and tort claims, should be resolved by the arbitrator in the first instance—as would be expected under an order compelling arbitration. But as a result, that independent substantive issue remains unresolved in the district court.

The district court's decision to stay the case reflects its recognition of the ongoing supervisory role that *Spizzirri* contemplates courts will play. But even under TikTok's own theory of finality, the presence of an unresolved substantive claim means the order cannot be final. The district court's order compelling arbitration and staying the case is interlocutory and not immediately appealable, and this appeal should be dismissed.

## II.     THE DISTRICT COURT CORRECTLY GRANTED THE PETITION TO COMPEL ARBITRATION

The district court properly applied both federal arbitration precedent and California contract law in granting the petition to compel arbitration. The facts here differ critically from the authority that TikTok cites. For one thing, TikTok's conduct here is not typical of arbitration cases. The company required arbitration in its Original Terms (and specified that the arbitration clause would survive their termination); but then updated those terms to require litigation in a specified forum; and now seeks to apply the Updated Terms retroactively to claims that were arbitrable when they accrued. The district court correctly concluded that under these

23

circumstances, TikTok needed to do more than simply remove the arbitration clause and state that prior versions of the terms were superseded.

### A. The Updated Terms Contain No Clear and Specific Waiver of the Severable Arbitration Clause in the Original Terms

Consistent with the principle that arbitration agreements have a separate existence from the contracts that contain them (such that they are "severable"), the district court correctly held that "an arbitration clause 'will survive even where the prior agreement itself is rescinded by the latter agreement' unless the subsequent agreement contains a 'clear and specific waiver' of the arbitration clause." ER-22 (quoting *Homestake Lead Co. of Mo. v. Doe Run Res. Corp.*, 282 F. Supp. 2d 1131, 1142 (N.D. Cal. 2003)). By merely removing the arbitration clause from its Updated Terms, without even mentioning the prior arbitration agreement, TikTok failed to effect a clear and specific waiver.

Under Section 2 of the FAA, "an arbitration provision is severable from the remainder of the contract." *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 71 (2010) (quoting *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 445 (2006)). The Supreme Court has emphasized: "That is because § 2 states that a 'written provision' 'to settle by arbitration a controversy' is 'valid, irrevocable, and enforceable' *without mention* of the validity of the contract in which it is contained." *Id.* at 70; *see also Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395,

24

402 (1967) ("[A]rbitration clauses as a matter of federal law are 'separable' from the contracts in which they are embedded.").

Severability acts to treat an arbitration clause as a contract in its own right, consistent with the text of the FAA. A party may challenge its validity for the same reason it claims the rest of the contract is invalid, but a standalone challenge to another section of the contract does not call into question the validity of the arbitration clause. *See Rent-a-Center*, 561 U.S. at 71. Without severability, parties could always seek to avoid arbitration by claiming that another breach of the contract rendered the arbitration agreement ineffective, or by waiting until a contract expires or is terminated and claiming that the arbitration agreement, like the contract, is no longer in force. *See Litton Fin. Printing Div. v. NLRB*, 501 U.S. 190, 204 (1991) (alluding to the "presumption in favor of postexpiration arbitration"); *Drake Bakeries, Inc. v. Loc. 50, Am. Bakery & Confectionery Workers Int'l, AFL-CIO*, 370 U.S. 254, 262 (1962) (explaining that arbitration provisions "are meant to survive breaches of contract, . . . even total breach"). Arbitration agreements require separate lives from their container contracts (and therefore must be separately and explicitly abrogated) so that they can be enforced at all.

As this Court has explained, "the need for an arbitration provision to have post-expiration effect is intuitive, because if the duty to arbitrate automatically terminated upon expiration of the contract, a party could avoid his contractual duty

25

to arbitrate by simply waiting until the day after the contract expired to bring an action regarding a dispute that arose while the contract was in effect." *Shivkov v. Artex Risk Sols., Inc.*, 974 F.3d 1051, 1061 (9th Cir. 2020) (quoting *Huffman v. Hilltop Cos.*, 747 F.3d 391, 395 (6th Cir. 2014)). Indeed, even where a contract contains a clause identifying those provisions that survive the contract's termination, without identifying the arbitration provision, the parties have not "expressly negated the presumption in favor of post-termination arbitration, or clearly implied that their arbitration obligations would not survive termination." *Shivkov*, 974 F.3d at 1063. *A fortiori*, TikTok could not have abrogated the arbitration clause in the Original Terms, which *does* specify that it will survive termination, simply by replacing those jurisdictional terms with new ones and failing to mention arbitration. The doctrine of severability thus explains why the Updated Terms needed (but failed) to include a "clear and specific waiver" of the arbitration provision in the Original Terms.

TikTok here contends that the district court improperly relied on *Homestake Lead*, 282 F. Supp. 2d at 1142, for the proposition that "[a]bsent the explicit intention to rescind an arbitration clause, . . . the clause will survive even where the prior agreement is rescinded by the latter agreement." Br. at 29-30. TikTok argues that *Homestake Lead*'s "clear and specific waiver" principle arises from the presumption in favor of arbitrability that it argues is not present here, because *Homestake Lead*

26

cited *WorldCrisa Corp. v. Armstrong*, 129 F.3d 71, 74-75 (2d Cir. 1997), which "found the rule implicit in the presumption of arbitrability." Br. at 30 & n.11.

TikTok is wrong. The "presumption" at issue in this case is not in favor of arbitrability *per se*, but in favor of the ongoing validity of an arbitration *agreement* in an otherwise-terminated contract. To that end, *Homestake Lead* relied on *Berkery v. Cross Country Bank*, 256 F. Supp. 2d 359, 369 (E.D. Pa. 2003), which in turn relied on *Prima Paint* and the principle of severability to conclude that an arbitration provision survives the termination of a contract "whether the original agreement is rescinded, as opposed to merely expired."

TikTok cites the comment in *Morgan v. Sundance Inc.*, 591 U.S. 411 (2022), *see* Br. at 30, that the FAA "is about treating arbitration contracts like all others, not about fostering arbitration." *Id.* at 419. This language did not effect the sea change in pro-arbitration jurisprudence that TikTok's interpretation would afford it. Instead, *Morgan* overruled the *judge-made* requirement that a party could have waived the right to arbitration if its invocation of the right "prejudiced the other party by its inconsistent actions." *Id.* at 415. *Morgan* follows in a tradition of cases policing extratextual departures from the strictures of the FAA, whether or not they favor arbitration. *See, e.g.*, *Henry Schein, Inc. v. Archer and White Sales, Inc.*, 586 U.S. 63, 68 (2019) (abrogating the judge-made "wholly groundless" exception to threshold questions of arbitrability); *Hall St. Assocs. v. Mattel, Inc.*, 552 U.S. 576,

27

585-86 (2008) (holding that a contractual agreement for a court to review an arbitral award for legal error is unenforceable under the FAA).

In short, a clear and specific waiver of an arbitration agreement is necessary to demonstrate that the parties have waived the default rule that arbitration clauses outlast the contracts that contain them. This is not a matter of upholding a presumption in favor of arbitrability, nor does it privilege arbitration agreements over other kinds of contracts. It simply demonstrates fidelity to the FAA's severability rule. The district court properly held that the Updated Terms failed to include a clear and specific waiver *of the arbitration agreement* in the Original Terms, which therefore survives as to claims that accrued under the Original Terms.

### B.  Petitioner's Claims Accrued Under the Original Terms

The district court correctly held that because the claims that Edwards seeks to arbitrate accrued before the Updated Terms came into effect, the forum-selection clause does not apply to them retroactively. *See* ER-21. TikTok now contends, for the first time, *see* Br. at 26-27, 31-32, that "the dispute here . . . arose after the Updated Terms took effect." TikTok has waived this argument, and the Court should not consider it: "It is well established that an appellate court will not reverse a district court on the basis of a theory that was not raised below." *Loomis v. Cornish*, 836 F.3d 991, 997 (9th Cir. 2016) (citation omitted).

TikTok's argument also fails on the merits. TikTok attempts to reframe the relevant issue as when the "dispute arose," rather than, as the district court framed it, when the claims accrued. With that sleight of hand, TikTok relies on out-of-circuit authority for the proposition that "[f]or purposes of arbitration, a dispute arises 'when the parties become adverse to one another,' which typically means 'when the injured party sends the defendant a demand letter' or 'requests arbitration.'" Br. at 26 (quoting *Memmer v. United Wholesale Mortg., LLC*, 135 F.4th 398, 409 (6th Cir. 2025)). This authority addresses the Ending Forced Arbitration of Sexual Assault and Sexual Harassment Act ("EFAA"), 9 U.S.C. §§ 401 *et seq.*, and the particular statutory term of art ("dispute") contained therein.[4] Nothing in this case turns on the meaning of the word "dispute"—the Original Terms refer to any "dispute, *controversy, or claim*," and the Updated Terms refer to any "*claim*, *cause of action*, or dispute." ER-143, ER-169 (emphasis added). The meaning of the term "dispute" in an inapposite statute has no bearing on the arbitrability of Petitioner's claims that accrued under the Original Terms.

---

[4] In interpreting the EFAA, which bars the enforcement of an arbitration agreement as to a sexual assault or sexual harassment "dispute" entered into before that "dispute" arose, courts have grappled with the question of how to define that term because it is undefined in the statute.

### C. On Its Face, the Forum-Selection Clause Applies Exclusively to Claims Arising Under the Updated Terms

TikTok ignores another critical distinction between the Terms: unlike the arbitration provision in the Original Terms, the forum-selection clause in the Updated Terms is expressly limited to claims arising under the Updated Terms. The Original Terms broadly require arbitration of "any dispute, controversy, or claim . . . relating in any way to your use of TikTok's services and/or products, including the Services, or relating in any way to the communications between you and TikTok or any other user of the Services." ER-143-44. By contrast, the provision in the Updated Terms is far more limited: it applies only to "[a]ny claim, cause of action or dispute, arising out of or relating to *these Terms*." ER-169 (emphasis added). A claim must arise out of or relate to "these Terms"—namely, the *Updated* Terms—to come within the ambit of the forum-selection clause. Edwards' claims do not arise out of or relate to the Updated Terms; rather, they arise from TikTok's conduct occurring before the Updated Terms came into effect. See ER-101, ¶ 48; ER-111-12, ¶¶ 6-7. On its face, therefore, the forum-selection clause in the Updated Terms does not apply to Edwards' claims. The district court was correct to hold that, with respect to the Updated Terms, "notwithstanding the integration clause, the arbitration agreement governs claims arising prior to 2023." ER-21.

In addition to the foregoing conclusion under the plain language of the Terms, this Court does not afford any contract an absurd meaning, including in applying

30

California law, *see Carroll Shelby Licensing, Inc. v. Halicki*, 138 F.4th 1178, 1186 (9th Cir. 2025); and TikTok has asserted to the AAA that the Original Terms were "void" and "superseded" by the Updated Terms. ER-174. It is absurd to say that even though the Updated Terms supersede any prior terms, the forum-selection clause somehow *resuscitates* the Original Terms to the extent of applying the new forum-selection clause to disputes that arose under them.

### D. TikTok's Preferred Authority Is Unavailing

Much of the parties' briefing and the district court's order addressed the relevance *vel non* of this Court's decisions in *Suski v. Coinbase, Inc.*, 55 F.4th 1227 (9th Cir. 2022), and *Goldman, Sachs & Co. v. City of Reno*, 747 F.3d 733 (9th Cir. 2014), and the California Court of Appeal's decisions in *Franco v. Greystone Ridge Condominium*, 93 Cal. App. 5th 221 (2019), and *Salgado v. Carrows Restaurants, Inc.*, 33 Cal. App. 5th 356 (2019). Those cases do not speak to this case, and the district court was right to distinguish them. Considering that the facts of each case differ in ways material to the issues here, Petitioner examines them in some detail.

#### 1. *Suski Does Not Support TikTok's Position*

TikTok relies on *Suski*, 55 F.4th 1227, because it involved a contract with an arbitration agreement and a subsequent contract with a forum-selection clause, the latter of which was held to control. Those bare facts do not make the case analogous. *Suski* addressed claims that arose from the *latter* contract, holding that the prior

31

arbitration agreement could not reach forward in time and negate a forum-selection clause in an agreement covering a separate subject. Those are not the facts here.

TikTok challenges the district court's conclusion that the survivability clause in the Original Terms distinguishes this case from *Suski*, *see* ER-22, because after combing through the record in *Suski*, TikTok has located a survivability clause that no one raised to this Court.[5] The presence of the clause is less than dicta; an opinion cannot be said to have implicitly rejected an argument that no one made. TikTok's speculation as to why "[t]he survivability clause did not make a difference in *Suski*," *see* Br. at 26, is just that. The district court cannot be faulted for distinguishing this case from *Suski* on the basis of the survivability clause when *Suski* itself never addressed the question.

In addition, the survivability clause in the Original Terms here strongly supports the district court's conclusion that revocation of that clause requires clearer evidence of the parties' intent to revoke it than can be found in the Updated Terms. The arbitration clause in the Original Terms states that it "will survive any termination of these terms," ER-144, compelling the conclusion that to abrogate the

---

[5] *See Suski v. Coinbase, Inc.*, No. 22-15209 (9th Cir.), Appellant's Opening Brief, 2022 WL 1597745 (9th Cir. May 11, 2022); Plaintiffs-Appellees' Answering Brief, 2022 WL 2760950 (9th Cir. July 11, 2022); Appellant's Reply Brief, 2022 WL 4101015 (9th Cir. Aug. 31, 2022) (none mentioning survivability).

32

clause, the Updated Terms needed explicitly to say they were abrogating it. TikTok speculates that "[t]he survivability clause did not make a difference in *Suski* because, as a matter of California law, parties are always free to modify a written agreement with another written agreement." Br. at 26. That may be true as a general matter, but it offers no insight here. There was an arbitration provision in place, severable from its container contract, with an explicit statement that it survived any termination of the Original Terms.[6]

The issue is not whether TikTok theoretically *could* have modified the arbitration clause in the Original Terms, but rather whether the language the company actually employed did so. It did not. The forum-selection clause in the Updated Terms applies only to claims or disputes arising under "these Terms," and not prior iterations, and there is no language purporting to give the clause retroactive effect or to vitiate the arbitration survivability clause in the Original Terms. TikTok could have stated that the Updated Terms require all disputes or claims that arose

---

[6] TikTok also relies (*see* Br. at 24) on the decision in *Applied Energetics, Inc. v. NewOak Capital Markets, LLC*, 645 F.3d 522 (2d Cir. 2011), but that case is similarly distinguishable. The court there noted that the prior contract containing an arbitration clause "specifically contemplated that the parties would enter into a subsequent, more formal agreement," *id.* at 523, which they did, and that "formal" agreement contained a mandatory litigation forum-selection clause. TikTok's Original Terms, by contrast, were hardly characterized as preliminary or tentative— and their arbitration clause specifically stated that it would survive their termination.

33

under any prior iteration of terms of service to be governed by the forum-selection clause and that the survivability clause is revoked. It did not. *See, e.g.*, *CNH Indus. N.V. v. Reese*, 583 U.S. 133, 140 (2018) ("If the parties meant to vest healthcare benefits for life, they easily could have said so in the text. But they did not."); *In re ETM Entmt. Network, Inc.*, 154 F. App'x 4, 5 (9th Cir. 2005) (examining contractual language regarding "offset" and explaining that "recoupment is not offset, and the parties could have said recoupment, if they meant that").

The district court also properly distinguished *Suski* on the ground that the Original Terms and the Updated Terms are reconcilable in a way that the two contracts in *Suski* were not. It is not accurate that "[t]he agreements here are no less 'irreconcilable' than the ones in *Suski*." Br. at 27. Coinbase argued in *Suski* that the forum-selection clause in the subsequent agreement could apply only to the extent of "non-arbitrable claims and . . . suits seeking enforcement of any arbitration awards." 55 F.4th at 1231. By "non-arbitrable claims," Coinbase did not mean those that arose from the subject matter of the agreement with the forum-selection clause, but rather only claims that by their nature cannot be arbitrated, such as those seeking "to enforce an arbitration agreement, or to obtain a judgment enforcing an arbitration award," or "other remedies" that only a court may award. *Mohamed v. Uber Techs., Inc.*, 848 F.3d 1201, 1209 (9th Cir. 2016) (citation omitted).

34

Coinbase thus sought to inject the arbitration clause into a dispute that was arbitrable only because the plaintiff was a pre-existing Coinbase user, which meant that *as to the dispute that Coinbase sought to arbitrate*, there was a direct conflict. In this case, by contrast, the district court properly interpreted the Original Terms and the Updated Terms so as to harmonize them. This case *would* be like *Suski* and present irreconcilability if Edwards sought, on the authority of the prior arbitration agreement, to arbitrate a claim that accrued *after* the Updated Terms took effect— just as Coinbase sought to arbitrate a claim that arose under the agreement with a forum-selection clause. But that is not what Edwards sought to do, and the district court correctly concluded that the two sets of terms could reasonably coexist.[7]

### 2. *Goldman Sachs Does Not Support TikTok's Position*

TikTok also relies on *Goldman*, 747 F.3d 733, for the proposition that no "clear and specific waiver" was required to abrogate the arbitration clause in the Original Terms. *See* Br. at 24, 30. The district court correctly distinguished the

---

[7] TikTok raises the frivolous semantic complaint that although the district court described the two sets of terms as not "irreconcilable," the court later described them as "two opposing contracts," arguing that "[t]hey cannot be reconcilable one moment and in conflict the next." Br. at 27-28. This argument is wrong: the two sets of terms may "oppose" each other in that they point to different forums, but that does not make them "irreconcilable" for purposes of determining which terms apply to which claims based on when they arose. It is the nature of "reconciliation" to harmonize two superficially opposing contract provisions.

decision, which held that a forum-selection clause in an agreement between Goldman and the City of Reno trumped Goldman's default obligation to arbitrate with its customers as a consequence of its FINRA membership. *See id.* at 742. The clause did not "supersede" an arbitration agreement because Goldman's putative obligation to arbitrate in that case did not arise from any contract with the City of Reno containing an arbitration agreement. Because arbitration is a matter of "party agreement," *id.*, it was essential to the holding in *Goldman* that the only *agreement* between the parties was the contract containing the forum-selection clause. In that sense, this Court was presented with the question of whether an arbitration agreement "existed" at all—that is, whether the City of Reno could avail itself of Goldman's agreement *with FINRA* to arbitrate with its customers.

The result in *Goldman* simply reflects the centrality of party agreement to arbitrability. The parties contracted around a default rule with an agreement containing a forum-selection clause. Contracting out of a default rule with no prior agreement between the parties is not the same as contracting to supersede a prior agreement. As the district court properly noted, in light of the survivability clause in the Original Terms, TikTok (unlike Goldman) was not "free to make alternative arrangements . . . when the parties . . . modified their contractual relationship." ER-22 (quoting *Goldman*, 747 F.3d at 741). *Goldman* thus has nothing to say about what

36

is necessary for a party to supersede a prior arbitration *agreement*, as opposed to a regulatory presumption that arbitration is available.

### 3. *Franco, Salgado, and Heinz Do Not Support TikTok's Position*

The decisions in *Franco*, 93 Cal. App. 5th 221, and *Salgado*, 33 Cal. App. 5th 356, cannot bear the weight that TikTok puts on them. *See* Br. at 32-33. Both concerned the application of a later-signed *arbitration* clause to disputes that arose pre-signing and otherwise would have been *litigable* in the ordinary course—in other words, the opposite of the fact pattern here. Given the facts in these decisions, the courts simply did not address the effect of a subsequent contract on an earlier agreement to arbitrate, or the presumption that an arbitration agreement survives termination. The district court correctly distinguished these cases because they did not "deal[] with a situation" involving "two contracts," ER-23, a point that TikTok waves away by claiming that they did not "tie[] [their] outcome to the fact that there was only one contract," Br. at 33. But the presence of a separate contract requires a different analysis, so these cases say nothing about how a subsequent forum-selection clause might affect a prior agreement to arbitrate, let alone a prior agreement that contains an express survivability clause. If *Salgado* and *Franco* are relevant at all, they reflect a longstanding presumption in favor of arbitration that is consistent with the result the district court reached in this case.

37

In *Salgado*, the plaintiff argued that an arbitration clause could not apply to disputes that arose before she signed it. The court rejected the "contention that an agreement to arbitrate a dispute must pre-date the actions giving rise to the dispute" because "an arbitration agreement may be applied retroactively to transactions which occurred prior to execution of the arbitration agreement." 33 Cal. App. 5th at 361 (cleaned up). This conclusion was bolstered by the principles that "[a]rbitration is a favored procedure" that "should be upheld unless it can be said with assurance that an arbitration clause is not susceptible to an interpretation covering the asserted dispute," and that "[d]oubts about the applicability of the arbitration clause to the dispute should be resolved in favor of sending the parties to arbitration." *Id.* at 360. *Salgado* thus drew support for its conclusion in favor of the arbitrability of pre-agreement disputes from the presumption in favor of arbitrability that TikTok claims has no place here. TikTok cannot in the same breath contend that *Salgado* must control here *and* that the reasoning the court employed is irrelevant.

In *Franco*, the court concluded that where an employee agreed to arbitration of "any and all claims relating to any aspect of employment with Employer (*pre-hire through post-termination*)," then "the agreement's reference to claims relating to 'pre-hire' matters expresses an intent to cover all claims, regardless of when they accrued." 39 Cal. App. 5th at 223-24 (emphasis added) (alterations omitted). This language made it an even easier case than *Salgado*, because the employee could not

38

claim he was unaware the arbitration provision applied to pre-agreement disputes when it was so clearly spelled out that it did.[8]

The agreement in *Franco* illustrates what TikTok *could* have done when it purported to abrogate the prior arbitration agreement with a forum-selection clause. It could have said that the forum-selection clause controlled even those claims that arose or accrued before the Updated Terms took effect. It could have said that the forum-selection clause covered claims that would have been arbitrable under the Original Terms. It could have explained *how* it was "updating its Terms of Service for U.S. users regarding how we'll resolve disputes when you use TikTok," ER-80, rather than merely directing users to the new dispute-resolution provisions, which do not say the arbitration provision will no longer be in effect for claims that had already accrued. But TikTok did not do any of those things and therefore did not meet the requirements of the law addressing just such situations. *See also, e.g.*, *CNH Indus.*, 583 U.S. at 140 (explaining contractual interpretation by contrast to what the parties "could have said"); *ETM Entmt.*, 154 F. App'x at 5 (same).

The district court correctly declined to follow the Los Angeles County Superior Court's decision in *Heinz v. TikTok, Inc.*, 2024 WL 5418632 (Cal. Super.

---

[8] As the district court concluded, *see* ER-24, this Court's unpublished decision in *Pambakian v. Blatt*, 859 F. App'x 808 (9th Cir. 2021), dealt with an identical fact pattern to *Franco* and is therefore distinguishable for the same reasons.

Oct. 2, 2024), as unpersuasive. As a threshold matter, the *Heinz* court correctly identified that the claims in *Suski*, "unlike this case, arose after the parties executed both agreements that were purportedly in conflict." *Id.* at *2. Although TikTok argued, as here, "that the language 'any claims' in the July 2023 Terms of Service applies to claims regardless of when they arose," the court in *Heinz* distinguished the Updated Terms from language in a May 2023 iteration of the terms, noting that the "all claims" language "is distinctly different from the language, 'all Claims, including those that arose or were asserted before the effective date of this Arbitration Agreement' from the May 6, 2023 Terms of Service." *Id.*

But the court in *Heinz* was wrong in holding that, because *Salgado* held that "it is not correct to argue 'that an agreement to arbitrate a dispute must pre-date the actions giving rise to the dispute,'" that meant that "the broad language of the July 2023 Terms of Service . . . also applies retroactively to Petitioner's dispute and eliminates the possibility of seeking arbitration." *Id.* at *3. This conclusion fails even to address how *Salgado* differed from the facts presented both in *Heinz* and here, and how the underlying policies favoring arbitration support different conclusions depending on the facts. To say that an arbitration agreement (to be read in favor of arbitration) may reach back and capture claims arising before there was any dispute resolution agreement between parties, based simply on "any and all claims" language, does not answer whether a subsequent agreement may reach back and

40

nullify the effectiveness of a prior arbitration agreement (to be construed as severable and presumptively enforceable) as to claims that accrued when the earlier agreement was in place. And it says nothing about how the Updated Terms, which require judicial resolution only of claims "arising out of or relating to these Terms," could have applied retroactively to negate a presumptively severable arbitration agreement with a survivability clause.

### E. Under the Principle of *Contra Proferentem*, the Court Construes Any Ambiguity in Favor of Edwards

The district court correctly held, based on their plain language, that the Updated Terms failed to supersede the arbitration provision in the Original Terms. If there is any ambiguity in how the Updated Terms were meant to affect the Original Terms, the doctrine of *contra proferentem* requires construing the ambiguity against TikTok, the drafter. *See 24 Hour Fitness, Inc. v. Superior Ct.*, 66 Cal. App. 4th 1199, 1214-15 (1998) ("Particularly where the contract is one of adhesion, ambiguity in the contract language . . . is interpreted against the drafter."). This means interpreting the contract consistent with Edwards' reasonable expectation that the forum-selection clause in the Updated Terms does not cover her claims that accrued before those terms came into effect. *See Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 63 (1995) ("The reason for this rule is to protect the party who did not choose the language from an unintended or unfair result.").

41

The forum-selection clause does not purport to cover the same subject matter as the Original Terms, nor do the Updated Terms say they are revoking the arbitration clause in the Original Terms (or abrogating its survivability clause). TikTok could have made clear its intent not only to require all users to litigate in Los Angeles County from moment they accepted the new terms onward, but also to reach back and sweep any disputes that previously would have required arbitration into the ambit of the new forum-selection clause.

The Supreme Court has criticized applying *contra proferentem* in the arbitration context where it "interferes with fundamental attributes of arbitration and thus creates a scheme inconsistent with the FAA." *Lamps Plus*, 587 U.S. at 188. That dynamic is not at play here. Where the application of *contra proferentem* would *support* the federal policy in favor of arbitration, the policy interests furthered by the doctrine and the resolution of ambiguity in favor of arbitration are harmonized. *See Mastrobuono*, 514 U.S. at 62-63; *accord Lamps Plus*, 587 U.S. at 187 n.5 (explaining that in *Mastrobuono*, *contra proferentem* was "well suited to the facts of [that] case" because the FAA and *contra proferentem* "led to the same result"). As in *Mastrobuono*, "it seems unlikely that [Edwards] . . . had any idea that by signing a standard-form agreement" she "might be giving up an important substantive right."

42

514 U.S. at 63.[9] That is precisely the sort of contractual ambiguity a court should resolve against the drafter and in favor of arbitration, consistent with both *contra proferentem* and the FAA.

*     *     *

In sum, the district court correctly compelled arbitration for the reasons stated in its order. Under the FAA's severability doctrine, the arbitration provision in the Original Terms remained a separate, surviving agreement that could be displaced only through a "clear and specific waiver," which the Updated Terms lacked, especially given the survivability clause in the Original Terms. TikTok's new argument that the "dispute" arose after the Updated Terms took effect is both waived and meritless, as the relevant question is when the claims accrued, which occurred years earlier. In addition, the forum-selection clause in the Updated Terms applies only to claims "arising out of or relating to these Terms," making it narrower than the Original Terms and incapable of retroactively governing pre-existing claims—

---

[9] As a matter of party expectations, it is conspicuous that the Updated Terms say nothing about purporting to abrogate the prior agreement's arbitration clause precisely because the Original Terms *also* contain a forum-selection clause pointing to the same venue as the Updated Terms "[t]o the extent the partes are permitted under this Agreement to initiate litigation in a court[.]" ER-74. So the forum-selection clause is not "new" to the Updated Terms, yet the removal of the arbitration clause—the one substantive change—goes unmentioned, despite the Original Terms' insistence that the arbitration provision would survive termination.

which by definition could not have arisen out of or related to *subsequent* Terms. None of TikTok's authorities compels a different result: *Goldman* involved no prior arbitration agreement between the parties; *Suski* involved a dispute arising solely under the later contract; and *Franco* and *Salgado* addressed retroactive application of a single arbitration clause, not an attempt to retroactively negate it with a forum-selection clause. And if more were somehow needed, *contra proferentem* and the FAA point in the same direction—construing any ambiguity against TikTok as the drafter and in favor of Edwards as the party seeking to arbitrate.

## III. THE COURT MAY AFFIRM ON ALTERNATIVE GROUNDS

The district court did not reach Petitioner's arguments regarding the implied covenant of good faith and fair dealing, unconscionability, or disaffirmance. But this Court may affirm "on any ground supported by the record, whether or not the decision of the district court relied on the same grounds or reasoning." *Atel Fin. Corp. v. Quaker Coal Co.*, 321 F.3d 924, 926 (9th Cir. 2003). There are three alternative grounds on which the Court may affirm the district court's order compelling arbitration.

### A. The Updated Terms Violated the Implied Covenant

The implied covenant of good faith and fair dealing prohibits a contracting party from taking actions that unfairly frustrate the other party's rights under an existing agreement. *See Cobb v. Ironwood Country Club*, 233 Cal. App. 4th 960,

44

965-66 (2015). In fact, "with respect to arbitration provisions specifically, . . . the implied covenant of good faith and fair dealing prohibits a party from making unilateral changes to an arbitration agreement that apply retroactively to accrued or known claims because doing so would unreasonably interfere with the opposing party's expectations regarding how the agreement applied to those claims." *Id.* at 966 (cleaned up). TikTok's *sub silentio* attempt to retroactively extinguish Edwards' right to arbitrate claims arising under the Original Terms (and effectively waive accrued claims older than a year) is exactly the type of unreasonable conduct the implied covenant forbids.

TikTok barely acknowledges this argument, reciting the principle that that "'conduct can never violate the implied covenant of good faith and fair dealing' if it 'was expressly permitted by the agreement and was clearly within the parties' reasonable expectations.'" Br. at 36 (quoting *Carma Devs. (Cal.), Inc. v. Marathon Dev. Cal., Inc.*, 2 Cal. 4th 342, 376 (1992)) (alterations omitted). It is true that if "a modification provision *expressly addresses whether contract changes apply to claims that have accrued* or are known to the employer, the covenant cannot create implied terms that contradict the express language." *Peleg v. Neiman Marcus Grp.*, 204 Cal. App. 4th 1425, 1465 (2012) (emphasis added). But TikTok did not remotely meet that standard. The Updated Terms did not expressly address whether the forum-selection clause applies to claims that had accrued before the Updated Terms went

45

into effect; to the contrary, the Updated Terms state that the clause applies only to claims "arising out of or relating to these Terms." ER-169. Accordingly, the implied covenant precludes retroactive application of the forum-selection clause.

TikTok's defense also mistakenly assumes that its conduct was "within the parties' reasonable expectations." *Carma*, 2 Cal. 4th at 376. In fact, TikTok's interpretation of the Updated Terms was not within Edwards' reasonable expectations. TikTok did not make clear in the Updated Terms that it intended for those Terms to have retroactive effect, which *Cobb* held was an independent reason to find a breach of the implied covenant. *See* 233 Cal. App. 4th at 966-67 ("Even if it were otherwise theoretically proper for a party to unilaterally impose an arbitration provision that applied to claims which had already accrued, . . . there is nothing in the language of . . . this specific amendment, that states it is *intended* to have such a retroactive effect."). Instead, the pop-up notification TikTok relies upon said nothing about the elimination of arbitration, nothing about retroactive application, and nothing about restricting existing claims. Users who clicked through saw only a vague reference to changes "regarding how we'll resolve disputes." ER-80. That is not enough to defeat application of the implied covenant in favor of Edwards.

## B. The Updated Terms Are Unconscionable

TikTok's attempt to apply the Updated Terms retroactively would also be unconscionable. If TikTok's interpretation is correct, it operates as a *de facto* release

of all claims predating July 2023 by imposing, after the fact, not only an exclusive forum-selection clause, but also a one-year limitations period on users (many of whom are minors) who originally assented only to an arbitration clause that by its clear terms survives termination of the governing terms. TikTok ignores the bulk of this argument, using ellipses to omit Edwards' argument that applying the Updated Terms retroactively would operate to wipe out any claims that accrued more than one year prior. *See* Br. at 35 (quoting ER-193). TikTok declares that "nothing shocks the conscience about moving dispute resolution out of arbitration and back into the court system," *id.*, but cites no authority for the proposition and fails to address the actual circumstances presented here.

"[T]he doctrine of unconscionability has both a procedural and a substantive element, the former focusing on oppression or surprise due to unequal bargaining power, the latter on overly harsh or one-sided results." *Baltazar v. Forever 21, Inc.*, 62 Cal. 4th 1237, 1243 (2016). Unconscionability is evaluated on a "'sliding scale' under which 'the more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa." *Keebaugh v. Warner Bros. Entmt. Inc.*, 100 F.4th 1005, 1022 (9th Cir. 2024) (quoting *Baltazar*, 62 Cal. 4th at 1244). TikTok's conduct satisfies both elements. The Updated Terms were the very sort of "standardized contract, drafted by the party of superior bargaining strength, that relegate[d] to the

47

subscribing party only the opportunity to adhere to the contract or reject it" that this Court considers procedurally unconscionable as a matter of California law. *Porkorny v. Quixtar, Inc.*, 601 F.3d 987, 996 (9th Cir. 2010) (quoting *Ting v. AT&T*, 319 F.3d 1126, 1148 (9th Cir. 2003)). And TikTok's significant modification of the Terms, signaled only by a pop-up generically stating that TikTok was changing the way it resolved disputes with users, gave no indication that it was asking users (particularly minors) to sign away meaningful substantive rights and accrued claims.

As to substance, TikTok's contention that the forum-selection applies retroactively would impose severe, one-sided consequences on users, stripping them of the arbitral forum they had been entitled to and requiring them to travel to California to litigate claims. *See Magno v. The Coll. Network, Inc.*, 1 Cal. App. 5th 277, 288 (2016) (affirming finding of substantive unconscionability where "young, college-aged students" targeted by defendant's business in California would have been required to travel to Indiana to arbitrate any claims). Not only that, the new terms bound users (but *not* TikTok) to a shortened limitations period that would have released any claims they had against TikTok that accrued more than a year before the day they agreed to the Updated Terms. *See id.* at 291 (noting that a "shortened limitations period provides another indicator of substantive unconscionability" and collecting cases); *Pokorny*, 601 F.3d at 998 (holding substantively unconscionable an ADR agreement that "lacked mutuality" and applied a shortened statute of

48

limitations to "any claims against the defendant without placing any similar limitations on the defendant's right to bring claims against the plaintiff").

Against these factors, TikTok's threadbare assertion that nothing about its conduct "shocks the conscience" is no response at all. TikTok's preferred interpretation of the Updated Terms is unconscionable, and the Court would be right to compel arbitration to avoid that outcome.

### C. Petitioner Has Disaffirmed the Updated Terms of Service on Behalf of D.B.

TikTok also largely fails to address the fact that in her petition, Edwards disaffirmed the Updated Terms on behalf of her daughter. Her petition to compel arbitration was sufficient to constitute disaffirmance. *See Coughenour v. Del Taco, LLC*, 57 Cal. App. 5th 740, 748 (2020) ("The filing of a lawsuit is sufficient disaffirmance."); *Celli v. Sports Car Club of Am., Inc.*, 29 Cal. App. 3d 511, 517 (1972) (same). Upon disaffirmance, the operative contract "has the effect of a rescission," the effect of which is to "void the contract *ab initio*," rendering it "a nullity." *Scollan v. Gov't Emp. Ins. Co.*, 222 Cal. App. 2d 181, 183 (1963). Disaffirmance of a voidable contract that replaced a prior contract, in turn, revives that prior contract. *See Airs Int'l, Inc. v. Perfect Scents Distributions, Ltd.*, 902 F. Supp. 1141, 1148 (N.D. Cal. 1995); Restatement (Second) of Contracts § 279

49

cmt. b (Am. Law Inst. 1979) ("[O]n avoidance of the substituted contract the original duty is again enforceable.").[10]

Minors' right of disaffirmance reflects California public policy intended to "shield[] minors from their lack of judgment and experience and confers upon them the right to avoid their contracts in order that they may be protected against their own improvidence and the designs and machinations of other people, thus discouraging adults from contracting with them." *J.R. v. Elec. Arts Inc.*, 98 Cal. App. 5th 1107, 1115 (2024) (citation omitted). TikTok, which is well aware of the enormous number of minors who use its platform, has assumed this risk.

TikTok erroneously contends that Edwards could not have disaffirmed the Updated Terms on behalf of her daughter because D.B.'s continued use of TikTok manifests continued assent to the operative Terms of Service. That argument fails to

---

[10] TikTok contends that Edwards has failed to explain why California law applies to this dispute notwithstanding the fact that it governs only the Updated Terms. *See* Br. at 22 & n.9. But a forum court is "entitled to apply its own law" unless there is a "true conflict" with the law that might otherwise be applicable. *See, e.g.*, *Ins. Co. of N. Am. v. Fed. Exp. Corp.*, 189 F.3d 914, 921 (9th Cir. 1999). TikTok did not dispute the application of California law below or suggest that another state's law both applies and conflicts with California law, nor does it do any of those things in this Court. Edwards' consent to the application of California law to this dispute is not implicit acquiescence to the Updated Terms because their choice-of-law provision points to California. *See, e.g.*, *T.K. v. Adobe Sys. Inc.*, 2018 WL 1812200, at *6 (N.D. Cal. Apr. 17, 2018) ("T.K.'s reference to the choice of law provision in the terms of service is not inconsistent with her disaffirmance of the entire contract.").

50

account for the facts alleged in the petition: D.B. became addicted to TikTok; it has severely affected her mental health; and Edwards' efforts to stop her from using it have been unsuccessful. *See* ER-96-98, ¶¶ 32-36; ER-100, ¶ 43. Courts presented with similar arguments *resisting* arbitration have been required to defer questions of enforceability based on minors' addiction to an arbitrator, *see, e.g.*, *Antonetti v. Activision Blizzard, Inc.*, 764 F. Supp. 3d 1309, 1323 (N.D. Ga. 2025); *Courtright v. Epic Games, Inc.*, 766 F. Supp. 3d 873, 889 (W.D. Mo. 2025), but there is no such obstacle here. All parties agree that deciding arbitrability is within the province of the courts. *See* Br. at 18. This Court may reach the question and, consistent with the policy undergirding California's disaffirmance doctrine, hold that Edwards has disaffirmed the Updated Terms of Service on behalf of her daughter.

51

## **CONCLUSION**

For the foregoing reasons, the appeal should be dismissed, and if not the order

of the district court granting the petition to compel arbitration should be affirmed.

Date:  February 2, 2026                    Respectfully submitted,

                                           */s/ Edward Normand*
                                           Edward Normand
                                           Kyle W. Roche
                                           Alex Potter
                                           Patrick J. Woods
                                           **FREEDMAN NORMAND**
                                           **FRIEDLAND LLP**
                                           10 Grand Central
                                           155 E 44th Street, Suite 915
                                           New York, NY 10017
                                           Telephone: (646) 494-2900
                                           Email:  kroche@fnf.law
                                           Email:  tnormand@fnf.law
                                           Email:  apotter@fnf.law
                                           Email:  pwoods@fnf.law

                                           *Attorneys for Petitioner-Appellee Brittany*
                                           *Edwards, on behalf of D.B. Barlow*

## UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

**Form 17. Statement of Related Cases Pursuant to Circuit Rule 28-2.6**

*Instructions for this form:* *http://www.ca9.uscourts.gov/forms/form17instructions.pdf*

**9th Cir. Case Number(s):** 25-5868

The undersigned attorney or self-represented party states the following:

[X] I am unaware of any related cases currently pending in this court.

[ ] I am unaware of any related cases currently pending in this court other than the case(s) identified in the initial brief(s) filed by the other party or parties.

[ ] I am aware of one or more related cases currently pending in this court. The case number and name of each related case and its relationship to this case are:

**Signature:** */s/ Edward Normand*          **Date:** 02/02/2026

.

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

**Form 8. Certificate of Compliance for Briefs**

*Instructions for this form:* *http://www.ca9.uscourts.gov/forms/form08instructions.pdf*

**9th Cir. Case Number(s)**: 25-5868

I am the attorney or self-represented party.

**This brief contains 12,437 words,** excluding the items exempted by Fed. R. App. P. 32(f). The brief's type size and typeface comply with Fed. R. App. P. 32(a)(5) and (6).

I certify that this brief *(select only one)*:

[X] complies with the word limit of Cir. R. 32-1.

[ ] is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

[ ] is an **amicus** brief and complies with the word limit of Fed. R. App. P. 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

[ ] is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

[ ] complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:
    [ ] it is a joint brief submitted by separately represented parties;
    [ ] a party or parties are filing a single brief in response to multiple briefs; or
    [ ] a party or parties are filing a single brief in response to a longer joint brief.

[ ] complies with the length limit designated by court order dated _____.

[ ] is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature:** */s/ Edward Normand*       **Date:** 02/02/2026