No. 25-5868

# In the
# United States Court of Appeals
# for the Ninth Circuit

Brittany Edwards, on behalf of D.B. Barlow,

*Petitioner-Appellee*,

v.

TikTok Inc.,

*Respondent-Appellant.*

On Appeal from the United States District Court
for the Central District of California
Judge Jesus G. Bernal, No. 5:25-cv-01216-JGB-SP

## REPLY BRIEF FOR RESPONDENT-APPELLANT

Anthony J Weibell
MAYER BROWN LLC
3000 El Camino Real
Two Palo Alto Square
Palo Alto, CA 94306-2112
(650) 331-2000
aweibell@mayerbrown.com

Noel J. Francisco
David K. Suska
JONES DAY
51 Louisiana Avenue, N.W.
Washington, D.C. 20001-2113
(202) 879-3939
njfrancisco@jonesday.com
dsuska@jonesday.com

*Counsel for Respondent-Appellant TikTok Inc.*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES................................................................................................ii

INTRODUCTION ............................................................................................................1

ARGUMENT ....................................................................................................................3

I.     THIS COURT HAS JURISDICTION. ......................................................................3

        A.     *Spizzirri* Does Not Overrule *IATSE*. ........................................................3

        B.     Edwards Did Not Plead a Claim for Arbitration Fees and Costs..............5

        C.     The "Stay" Was Improper and Irrelevant. .......................................................6

        D.     Neither *Green Tree* Nor *Lamps Plus* Helps Edwards....................................7

        E.     Edwards's Policy Arguments Are Unavailing...................................................7

II.     THIS COURT SHOULD REVERSE. .......................................................................8

        A.     The Forum-Selection Clause Applies. ............................................................8

        B.     Edwards's Counterarguments Fail. ...............................................................10

             1.     No "Clear and Specific Waiver" Was Needed—and Regardless, the Updated Terms Are Clear and Specific. ...................................10

             2.     There Is No Retroactivity Issue—and Regardless, the Forum-Selection Clause Applies Retroactively. ...........................................13

             3.     The Updated Terms "Relate To" This Dispute............................15

             4.     *Contra Proferentem* Does Not Apply. ....................................................16

        C.     Edwards's "Alternative Grounds" Arguments Also Fail. ...........................17

             1.     The Updated Terms Are Not Unconscionable..............................18

             2.     The Updated Terms Do Not Violate the Implied Covenant of Good Faith and Fair Dealing. ..........................................................22

             3.     Edwards Cannot Disaffirm the Updated Terms............................24

CONCLUSION ...............................................................................................................26

CERTIFICATE OF SERVICE........................................................................................28

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Alameda Health Sys. v. Alameda Cnty. Employees' Ret. Assn.*,
319 Cal. Rptr. 3d 710 (Cal. Ct. App. 2024)...................................................................23

*Applied Energetics, Inc. v. NewOak Capital Markets, LLC*,
645 F.3d 522 (2d Cir. 2011) ...................................................................... 9, 10

*Armendariz v. Found. Health Psychcare Servs., Inc.*,
6 P.3d 669 (Cal. 2000)...................................................................................20

*B.D. v. Blizzard Entm't Inc.*,
292 Cal. Rptr. 3d 47 (Cal. Ct. App. 2022)....................................................19

*Brown v. Pac. Life Ins. Co.*,
462 F.3d 384 (5th Cir. 2006) ............................................................................3

*Burgoon v. Narconon of N. Cal.*,
2016 WL 192536 (N.D. Cal. Jan. 15, 2016)..................................................25

*C.M.D. ex rel. De Young v. Facebook, Inc.*,
621 F. App'x 488 (9th Cir. 2015) ..................................................................24

*Carma Devs. (Cal.), Inc. v. Marathon Dev. California, Inc.*,
826 P.2d 710 (Cal. 1992)................................................................................23

*Carnival Cruise Lines, Inc. v. Shute*,
499 U.S. 585 (1991) .......................................................................................21

*Casas v. Carmax Auto Superstores Cal., LLC*,
169 Cal. Rptr. 3d 96 (Cal. Ct. App. 2014)....................................................22

*Cobb v. Ironwood Country Club*,
183 Cal. Rptr. 3d 282 (Cal. Ct. App. 2015)..................................................23

*Colachis v. Griswold*,
2008 WL 5395682 (Cal. Ct. App. Dec. 29, 2008) ........................................................15

*Cornelius v. CVS Pharm. Inc.*,
133 F.4th 240 (3d Cir. 2025) ........................................................14

*Courtright v. Epic Games, Inc.*,
766 F. Supp. 3d 873 (W.D. Mo. 2025) ........................................................25

*Dean Witter Reynolds, Inc. v. Super. Ct.*,
259 Cal. Rptr. 789 (Cal. Ct. App. 1989) ........................................................19

*E.K.D. ex rel. Dawes v. Facebook, Inc.*,
885 F. Supp. 2d 894 (S.D. Ill. 2012) ........................................................24

*Famuyide v. Chipotle Mex. Grill, Inc.*,
111 F.4th 895 (8th Cir. 2024) ........................................................14

*First Options of Chicago, Inc. v. Kaplan*,
514 U.S. 938 (1995) ........................................................8

*Franco v. Greystone Ridge Condo.*,
252 Cal. Rptr. 3d 149 (Cal. Ct. App. 2019) ........................................................15

*Galaxia Elecs. Co., Ltd. v. Luxmax, U.S.A.*,
2018 WL 11421517 (C.D. Cal. June 6, 2018) ........................................................11

*Goldman, Sachs & Co. v. City of Reno*,
747 F.3d 733 (9th Cir. 2014) ........................................................2, 9, 11, 13

*Granite Rock Co. v. Int'l Bhd. of Teamsters*,
561 U.S. 287 (2010) ........................................................14

*Green Tree Financial Corp.-Alabama v. Randolph*,
531 U.S. 79 (2000) ........................................................4

*Grey v. Am. Mgmt. Servs.*,
139 Cal. Rptr. 3d 210 (Cal. Ct. App. 2012) ........................................................8

*Han v. Mobil Oil Corp.*,
  73 F.3d 872 (9th Cir. 1995) ...................................................................................21

*Heinz v. TikTok, Inc.*,
  2024 WL 5418632 (Cal. Super. Ct. Oct. 2, 2024) .................................... 9, 19

*IATSE Loc. 720 v. InSync Show Prods., Inc.*,
  801 F.3d 1033 (9th Cir. 2015) ............................................................1, 3, 6, 7

*In re Preston*,
  516 B.R. 606 (C.D. Cal. 2014) ...........................................................................25

*Int'l Union of Bricklayers & Allied Craftsman v. Martin Jaska, Inc.*,
  752 F.2d 1401 (9th Cir. 1985) ............................................................................17

*Janda v. T-Mobile USA, Inc.*,
  378 F. App'x 705 (9th Cir. 2010) ......................................................................21

*Jarboe v. Hanlees Auto Grp.*,
  267 Cal. Rptr. 3d 640 (Cal. Ct. App. 2020)........................................ 8, 10, 12

*Kader v. S. Cal. Med. Ctr., Inc.*,
  317 Cal. Rptr. 3d 682 (Cal. Ct. App. 2024)......................................................14

*Keebaugh v. Warner Bros. Entm't Inc.*,
  100 F.4th 1005 (9th Cir. 2024) ..........................................................................20

*Kinney v. Youtube, LLC*,
  2018 WL 5961898 (Cal. Ct. App. Nov. 14, 2018) .........................................21

*Lamps Plus, Inc. v. Varela*,
  587 U.S. 176 (2019) ................................................................................................7

*Lennar Homes of Cal., Inc. v. Stephens*,
  181 Cal. Rptr. 3d 638 (Cal. Ct. App. 2014)......................................................19

*Magno v. The College Network, Inc.*,
  204 Cal. Rptr. 3d 829 (Cal. Ct. App. 2016)......................................................21

*Marsh v. J. Alexander's LLC,*
    905 F.3d 610 (9th Cir. 2018) ................................................................13

*Memmer v. United Wholesale Mortg., LLC,*
    135 F.4th 398 (6th Cir. 2025) ..............................................................14

*Morgan v. Sundance, Inc.,*
    596 U.S. 411 (2022) ..............................................................................12

*Mountain States Tel. Co. v. Pueblo of Santa Ana,*
    472 U.S. 237 (1985) ................................................................................5

*Pambakian v. Blatt,*
    859 F. App'x 808 (9th Cir. 2021) .........................................................15

*Porkorny v. Quixtar, Inc.,*
    601 F.3d 987 (9th Cir. 2010) ...............................................................20

*Poublon v. C.H. Robinson Co.,*
    846 F.3d 1251 (9th Cir. 2017) .............................................................19

*Powers v. Dickson, Carlson & Campillo,*
    63 Cal. Rptr. 2d 261 (Cal. Ct. App. 1997) ..........................................17

*R.A. v. Epic Games, Inc.,*
    2019 WL 6792801 (C.D. Cal. July 30, 2019) ................................ 24, 25

*Salgado v. Carrows Rests., Inc.,*
    244 Cal. Rptr. 3d 849 (Cal. Ct. App. 2019) .................................. 14, 15

*Shen v. United Parcel Serv.,*
    2022 WL 17886012 (C.D. Cal. Nov. 21, 2022) ....................................19

*Smith v. Spizzirri,*
    601 U.S. 472 (2024) ....................................................................... 1, 3, 4

*Soltani v. W. & S. Life Ins. Co.,*
    258 F.3d 1038 (9th Cir. 2001) .............................................................21

v

*Suski v. Coinbase, Inc.*,
  55 F.4th 1227 (9th Cir. 2022) .................................................................2, 8, 9, 11

*Tompkins v. 23andMe, Inc.*,
  840 F.3d 1016 (9th Cir. 2016) ...............................................................................20

*Trudeau v. Google LLC*,
  349 F. Supp. 3d 869 (N.D. Cal. 2018) ...................................................................22

*Trump v. CASA, Inc.*,
  606 U.S. 831 (2025) ..................................................................................................8

*United Steel & Serv. Workers Int'l Union v. Wise Alloys, LLC*,
  807 F.3d 1258 (11th Cir. 2015) ................................................................3, 4, 6, 7

*Wallrich v. Samsung Elecs. Am., Inc.*,
  106 F.4th 609 (7th Cir. 2024) ..................................................................... 3, 4, 6

*Wayne v. Staples, Inc.*,
  37 Cal. Rptr. 3d 544 (Cal. Ct. App. 2006) ...........................................................19

*Wind Dancer Prod. Grp. v. Walt Disney Pictures*,
  215 Cal. Rptr. 3d 835 (Cal. Ct. App. 2017) .........................................................22

*Yei A. Sun v. Adv. China Healthcare, Inc.*,
  901 F.3d 1081 (9th Cir. 2018) ...............................................................................16

**STATUTES**

9 U.S.C. § 3 ....................................................................................................................1, 4

9 U.S.C. § 4 ....................................................................................................................4, 5

9 U.S.C. § 16 ...............................................................................................................passim

9 U.S.C. § 401 ..................................................................................................................14

28 U.S.C. § 1291 ................................................................................................................8

Cal. Civ. Code § 1654 ......................................................................................................17

Cal. Civ. Code § 1670.5 ...................................................................................22

Cal. Civ. Code § 1698.........................................................................8, 9, 11, 12

Cal. Civ. P. Code § 1856.........................................................................8, 12, 13

Cal. Fam. Code § 6700...................................................................................24

Cal. Prob. Code § 811 ...................................................................................25

**INTRODUCTION**

Edwards offers over a dozen arguments in defense of the judgment below—including some never advanced below and others the District Court did not address. The sheer number of theories she advances suggests she has confidence in none of them. And for good reason—they all fail under well-established federal and state law.

As a threshold matter, this Court has jurisdiction. Section 16(a)(3) of the FAA authorizes appeals from "a final decision with respect to an arbitration," and this Court held in *IATSE* that an order granting a standalone petition to compel qualifies as such. Edwards's main counterargument—that *Spizzirri* overruled *IATSE*—is wrong. *Spizzirri* addressed whether a court may choose to stay or dismiss a case under *Section 3* of the FAA; it said nothing about *Section 16(a)(3)*. *IATSE* thus remains binding precedent. *IATSE* also forecloses Edwards's argument about the District Court's putative "stay." After the District Court granted the standalone petition to compel, there was nothing left of the case to stay, and *IATSE* holds that a court cannot defeat appealability in such circumstances by issuing a meaningless stay. Edwards's allegation about TTI not paying the costs and fees of arbitration likewise fails to defeat appellate jurisdiction for the simple reason that Edwards did not plead a claim for nonpayment of those costs and fees that was independent of her demand for an order compelling TTI to arbitrate. There is thus no such claim still pending below that defeats finality.

The merits are equally clear. Edwards and D.B. each agreed to Updated Terms, which include (a) the forum-selection clause making litigation the "exclusive[]" way to

1

resolve "any" disputes, and (b) the integration clause stating that the Updated Terms "constitute the whole legal agreement" and "completely replace any prior agreements." Accordingly, as a matter of straightforward state contract law, the forum-selection clause in the Updated Terms completely supersedes and replaces the arbitration agreement in the Original Terms. Tellingly, for all of her arguments in her brief, Edwards *never* addresses the integration clause. She simply ignores it.

The arguments Edwards does advance meet a dead end. She insists "clear and specific" language is required to displace an arbitration agreement. But this Court rejected that view in *Suski* and *Goldman Sachs* because it would require elevating arbitration agreements above other contracts—an approach the Supreme Court has disapproved. And regardless, the language here *is* clear and specific—the forum-selection and integration clauses unambiguously displace the arbitration agreement in the Original Terms. Edwards offers no plausible contrary interpretation. Edwards also contends that the forum-selection clause cannot apply retroactively, but this argument fails twice over. There is no retroactivity—the dispute here arose *after* the Updated Terms took effect. And even if it were otherwise, state law is clear that a forum-selection clause like this one presumptively applies to preexisting disputes and accrued claims.

Edwards's "alternative grounds" arguments are equally meritless. Her unconscionability and implied-covenant theories are factually and legally unsupported. They also focus on a provision of the Updated Terms not at issue. And her disaffirmance argument fails because she seeks to simultaneously void the parts of the

2

Updated Terms that she does not like and enforce those that she prefers—all while also conceding that D.B. continued using the TikTok app pursuant to the Updated Terms.

This Court should reach the merits and reverse.

## ARGUMENT

### I. THIS COURT HAS JURISDICTION.

As TTI previously explained (at 12-15), this Court has jurisdiction under Section 16(a)(3) of the FAA. Section 16(a)(3) authorizes appeals from "a final decision with respect to an arbitration," 9 U.S.C. § 16(a)(3), and an order compelling arbitration qualifies as such where, as here, "the only matter before [the] district court is [the] petition to compel … and the district court grants [it]," *IATSE Loc. 720 v. InSync Show Prods., Inc.*, 801 F.3d 1033, 1040 (9th Cir. 2015). Other circuits agree. *See Wallrich v. Samsung Elecs. Am., Inc.*, 106 F.4th 609, 616 (7th Cir. 2024); *United Steel & Serv. Workers Int'l Union v. Wise Alloys, LLC*, 807 F.3d 1258, 1266 (11th Cir. 2015); *Brown v. Pac. Life Ins. Co.*, 462 F.3d 384, 391 (5th Cir. 2006). Edwards identifies no contrary authority.

This Court rejected most of Edwards's jurisdictional counterarguments in denying her motion to dismiss. Dkt. 19. Those arguments still fail. So do her new ones.

### A. *Spizzirri* Does Not Overrule *IATSE*.

Edwards contends that *Smith v. Spizzirri*, 601 U.S. 472 (2024), overruled *IATSE*. According to Edwards, "*IATSE* is no longer controlling because *Spizzirri* fatally undermined its underlying premise," which she describes as "the notion that a district court's role largely ends once it compels arbitration." Edwards Br. 17-18.

3

Edwards misreads *Spizzirri*. The defendants there moved to compel arbitration and dismiss the case. 601 U.S. at 474. The plaintiffs conceded that their claims were arbitrable but insisted that the court had to stay the case under Section 3. *Id.* The question, then, was whether a court may choose between staying or dismissing when a party invokes Section 3. *Spizzirri* held that the "plain statutory text requires a court to stay the proceeding." *Id.* at 476. But it said nothing about standalone petitions to compel under Section 4. Nor did it address Section 16(a)(3). Thus, as the Seventh Circuit has held, *Spizzirri* does not overrule *IATSE*. *See Wallrich*, 106 F.4th at 617 (favorably citing *IATSE* and rejecting argument that *Spizzirri* affects appeals under Section 16(a)(3)).

Edwards's confusion about *Spizzirri* apparently stems from language in the opinion about courts ordering parties into arbitration and then remaining available "to assist," including by "facilitating enforcement of arbitral awards." Edwards Br. 18. According to Edwards, the possibility that parties ordered into arbitration might later return to court makes the order compelling arbitration non-final. *See id.*

The Supreme Court has already rejected this argument, even using the same example Edwards does: "The FAA does permit parties to arbitration agreements to bring a separate proceeding in a district court to enter judgment on an arbitration award once it is made (or to vacate or modify it), but the existence of that remedy does not vitiate the finality of the District Court's [order]." *Green Tree Financial Corp.-Alabama v. Randolph*, 531 U.S. 79, 86 (2000); *see also Wise Alloys*, 807 F.3d at 1269 (same). Moreover, the argument proves too much: On Edwards's reading of *Spizzirri*, there can never be

a "final decision with respect to an arbitration," 9 U.S.C. § 16(a)(3), because it is always possible that during or after arbitration a party returns to court. That, however, would nullify Section 16(a)(3)—the provision would authorize appeals from a class of orders that does not exist. *Spizzirri*, which did not even mention Section 16(a)(3), requires no such result. *Cf. Mountain States Tel. Co. v. Pueblo of Santa Ana*, 472 U.S. 237, 249 (1985) ("[A] statute should be interpreted so as not to render one part inoperative[.]").

### B.      Edwards Did Not Plead a Claim for Arbitration Fees and Costs.

To try to avoid *IATSE*, Edwards reframes her standalone petition to compel as something more. She says she "in fact raise[d] a substantive issue before the district court: [TTI's] liability for the arbitration fees [she] was forced to advance after [TTI] breached the arbitration agreement by refusing to pay its share." Edwards Br. 17. Indeed, she says she pleaded a "claim" for "affirmative relief" based on that "material breach." *Id.* at 17, 22. And that "claim" supposedly remains unresolved. *Id.* at 23.

This is revisionist history. Edwards did not file a complaint asserting such a claim. She instead filed a "Verified Petition to Compel Arbitration." ER-87. Its single count was labeled "9 U.S. Code § 4 - Failure to Arbitrate Under Agreement." ER-105. It sought only "an order, pursuant to 9 U.S.C. § 4, that compels [TTI] to arbitrate … including by paying AAA's arbitration fees and costs." ER-106. The passing mention of "AAA's arbitration fees and costs" was thus part and parcel of the demand for an order compelling TTI to arbitrate under Section 4. There was no independent claim asking the Court to award Edwards those fees and costs, or any other relief.

5

Again, *Wallrich* is instructive. As TTI pointed out (at 20-21), the petitioners there likewise prayed for an order compelling arbitration, "which includes paying the arbitration fees and costs." Petition at 10 (¶ 43), *Wallrich v. Samsung Elecs. Am., Inc.*, No. 22-cv-05506 (N.D. Ill. Oct. 7, 2022), Dkt. 1. That did not undermine the finality of the order granting the petition because, at bottom, the petition still "merely sought an order compelling arbitration." *Wallrich*, 106 F.4th at 617. So too here.

Edwards dismisses *Wallrich*, asserting that it "fail[ed] to articulate … why the presence or absence of pleaded claims should [matter]." Edwards Br. 20. But as *Wallrich*, *IATSE*, *Wise Alloys*, and *Brown* all explain, the presence or absence of pleaded claims affects whether the order compelling arbitration is "final" for purposes of Section 16(a)(3). It thus matters because the statute says so.

## C.    The "Stay" Was Improper and Irrelevant.

Those arguments having failed, Edwards tries a different one. She says the District Court ordered arbitration and then "stayed the case," and that "stay," she contends, makes the order compelling arbitration "interlocutory" and non-appealable rather than "final" and appealable. Edwards Br. 16-17.

*IATSE* rejects this argument too. As it explains: "[A] district court presented with a petition to compel arbitration and no other claims cannot prevent appellate review of an order compelling arbitration by issuing a stay." 801 F.3d at 1041; *see also Wallrich*, 106 F.4th at 616 (similar); *Wise Alloys*, 807 F.3d at 1270 (similar). That is because, in such a scenario, there is nothing to stay. Once the court adjudicates the

petition to compel, there is no claim, discovery, or further litigation of any kind. As a practical matter, then, any stay is meaningless, and so it cannot affect the finality of the order compelling arbitration any more than "staying a thirtieth birthday [can] make[] a person perpetually twenty-nine years old." *Wise Alloys*, 807 F.3d at 1269.[1]

### D. Neither *Green Tree* Nor *Lamps Plus* Helps Edwards.

For similar reasons, Edwards misplaces reliance on *Green Tree* and *Lamps Plus, Inc. v. Varela*, 587 U.S. 176 (2019). She clings to language in *Green Tree*, repeated in *Lamps Plus*, that says a stay in those cases would have precluded appellate review. Edwards Br. 21. But as *IATSE* explained, in *those* cases, the plaintiffs first sought to litigate substantive claims, and the defendants then moved to compel arbitration. 801 F.3d at 1040. The courts in those cases thus had litigation that they *could* stay after ordering arbitration. *Id.* This case, by contrast, involves a standalone petition to compel. And *IATSE* held that "[t]he limitation on appellate jurisdiction noted in *Green Tree's* footnote 2 does not apply" when the case involves a standalone petition to compel. *Id.*

### E. Edwards's Policy Arguments Are Unavailing.

Edwards ultimately falls back on policy. She says it is "prejudicial" to wait out an appeal and criticizes Section 16(a)(3) and the cases discussed above as "privileg[ing] only arbitration *defendants*." Edwards Br. 20. But Congress might have had good reason

---

[1] Edwards criticizes TTI's position as resting on "formalisms." Edwards Br. 16. But in her view, a district court can preclude an appeal merely by using the word "stay" somewhere in its order—even if there is nothing to stay.

for authorizing appeals as it did in Section 16(a)(3). Among other things, it means final orders concerning arbitration are as appealable as final orders in other contexts. *Cf.* 28 U.S.C. § 1291. Such a focus on finality is neither pro-plaintiff nor pro-defendant. And a prevailing party can always complain about prejudice from having to wait out an appeal; that is the consequence of Congress allowing appeals. In any event, "as with most questions of law, the policy pros and cons are beside the point." *Trump v. CASA, Inc.*, 606 U.S. 831, 856 (2025). This Court's jurisdiction is secure.

## II. THIS COURT SHOULD REVERSE.

The merits are equally straightforward.

### A. The Forum-Selection Clause Applies.

Start with common ground. Both sides agree that "arbitration is simply a matter of contract." *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943 (1995). Both agree that courts thus "apply state-law principles of contract formation and interpretation" when "determining whether parties have agreed to submit to arbitration." *Suski v. Coinbase, Inc.*, 55 F.4th 1227, 1230 (9th Cir. 2022). Both agree that "[a] contract in writing may be modified by a contract in writing." Cal. Civ. Code § 1698(a). And there is no dispute that "terms contained in an integrated written agreement may not be contradicted by prior or contemporaneous agreements." *Jarboe v. Hanlees Auto Grp.*, 267 Cal. Rptr. 3d 640, 649 (Cal. Ct. App. 2020); *see also* Cal. Civ. P. Code § 1856(a) (same); *Grey v. Am. Mgmt. Servs.*, 139 Cal. Rptr. 3d 210, 213 (Cal. Ct. App. 2012) ("common sense dictates" that an integrated agreement controls).

With that much consensus, this should be a simple case. As TTI explained (at 23-24), the parties here had two agreements governing use of the TikTok app: the Original Terms and the Updated Terms. Each addressed dispute resolution: the Original Terms called for arbitration, while the Updated Terms instead made litigation in California the "exclusive[]" way to resolve "[a]ny claim, cause of action[,] or dispute." ER-86. As a matter of state contract law, the Updated Terms with the forum-selection clause "modified," Cal. Civ. Code § 1698(a)—indeed, "supersede[d]," *Suski*, 55 F.4th at 1230—the Original Terms with the arbitration clause. The Updated Terms thus control.

*Suski* confirms this result. There, too, the parties had two agreements addressed to dispute resolution: an earlier one requiring arbitration, and a later one requiring litigation. 55 F.4th at 1228-29. This Court held that the later one controlled. *Id.* at 1230-31. It did so by applying the state-law rules discussed above. *Id.* And that outcome tracked this Court's prior decision in *Goldman, Sachs & Co. v. City of Reno*, 747 F.3d 733, 746 (9th Cir. 2014); the Second Circuit's prior decision in *Applied Energetics, Inc. v. NewOak Capital Markets, LLC*, 645 F.3d 522, 525-26 (2d Cir. 2011); and a state court's later decision in another case involving TTI and the Updated Terms, *Heinz v. TikTok, Inc.*, 2024 WL 5418632, at *4 (Cal. Super. Ct. Oct. 2, 2024).[2]

---

[2] Edwards tries to distinguish *Suski* by insisting that this case involves a retroactive application of the Updated Terms. Edwards Br. 35. She is incorrect. *Infra* Part II.B.2. Edwards tries to distinguish *Goldman Sachs* on the ground that the initial obligation to arbitrate there came from the institution's "FINRA membership." Edwards Br. 35-37. But nothing in *Goldman Sachs* turned on that wrinkle. On the contrary, *Goldman Sachs* looked to *Applied Energetics*, and there, the parties replaced one

Indeed, this case is even easier than *Suski*, because here the Updated Terms also include the integration clause stating that the Updated Terms "constitute the whole legal agreement between you and TikTok" and "completely replace any prior agreements"—*necessarily including the arbitration agreement in the Original Terms*. ER-83. The integration clause thus unambiguously provides that the Updated Terms supersede the Original Terms. And that means Edwards cannot rely on the arbitration agreement (or any other provision) in the Original Terms; it has been "completely replace[d]" by the forum-selection clause in the Updated Terms. *See Jarboe*, 267 Cal. Rptr. 3d at 649 (later agreement with dispute-resolution provision and integration clause "expressly superseded" earlier agreement with different dispute-resolution provision). Remarkably, across her 52-page brief, Edwards says *nothing* about the integration clause. She litigates this appeal as if it does not exist when, as a matter of law, it is *dispositive*.

### B. Edwards's Counterarguments Fail.

The various arguments that Edwards does make do not withstand scrutiny.

### 1. No "Clear and Specific Waiver" Was Needed—and Regardless, the Updated Terms Are Clear and Specific.

Edwards's lead argument is that the District Court correctly applied a "clear and specific waiver" rule and correctly concluded that the forum-selection clause was not

---

contract containing an arbitration clause with another containing a forum-selection clause—exactly the situation here. 645 F.3d at 525-26. Edwards therefore also tries to distinguish *Applied Energetics*, noting that there the parties' initial agreement contemplated that there might be a later one. Edwards Br. 33 n.6. But here, too, the Original Terms contemplated that the parties might modify or replace them. ER-118.

clear and specific enough about requiring litigation rather than arbitration of any dispute—including this one. Edwards Br. 24-28. This argument fails at each step.

To begin, this Court has rejected the claim that it takes clear and specific language to replace an arbitration agreement with a forum-selection clause. As *Goldman Sachs* put it: "While this certainly would be an easier case if the parties had included an express waiver [of the arbitration obligation], *we know of no requirement that they do so*." 747 F.3d at 744 (emphasis added); *see also Suski*, 55 F.4th at 1231 ("Coinbase is correct that the [later contract] contain[s] no language specifically revoking the parties' arbitration agreement in the [earlier contract]. By including the forum selection clause, however, the [later contract] evince[s] the parties' intent not to be governed by the [earlier contract's] arbitration clause[.]"); *Galaxia Elecs. Co., Ltd. v. Luxmax, U.S.A.*, 2018 WL 11421517, at *6 (C.D. Cal. June 6, 2018) (citing *Goldman Sachs* as holding that "[a]n express waiver of arbitration rights in a forum-selection clause is not required").

Undeterred, Edwards urges the Court to require clear and specific language here based on the "principle of severability"—the idea that "an arbitration clause [i]s a contract in its own right." Edwards Br. 25-27. That argument supports TTI. To assert that "an arbitration clause [i]s a contract in its own right" is to explain why this Court has previously *rejected* a clear-and-specific-waiver rule. California law allows parties to modify a contract in writing with another contract in writing—no clear-and-specific waiver required. Cal. Civ. Code § 1698(a). To demand a clear and specific waiver in the arbitration context would thus be to apply the kind of judge-made, pro-arbitration rule

11

that *Morgan v. Sundance, Inc.*, 596 U.S. 411, 418 (2022), forbids. Edwards denies that *Morgan* "effect[ed] [a] sea change." Edwards Br. 27. Sea change or not, *Morgan* denounced "custom-made rules" that "tilt" in favor of arbitration. 596 U.S. at 419.

Edwards is also wrong that the "survivability clause" in the Original Terms justifies a clear-and-specific-waiver rule. Edwards Br. 32. For one thing, parties are free to modify or supersede a survivability clause just like any other contractual provision. Cal. Civ. Code § 1698(a). Indeed, as TTI explained (at 26), *Suski* also involved an arbitration agreement with a survivability clause, and there the Court held that the arbitration agreement was superseded by a later-in-time forum-selection clause— despite the lack of a clear and specific waiver.[3] For another, the integration clause in the Updated Terms confirms that Edwards *cannot* rely on the survivability clause in the Original Terms. Because they contain the integration clause, the Updated Terms *extinguish* the Original Terms. And again, under state law, "terms contained in an integrated written agreement," like the Updated Terms, "may not be contradicted by prior or contemporaneous agreements," like the Original Terms." *Jarboe*, 267 Cal. Rptr. 3d at 649; Cal. Civ. P. Code § 1856(a). In sum, it is undisputed that the Updated Terms do *not* require arbitration; the survivability clause is *not* part of the Updated Terms; and,

---

[3] Edwards speculates that nobody noticed the survivability clause in *Suski* because it was not briefed. Edwards Br. 32. But it was in the record excerpts. TTI Br. 26. If anything, then, this shows that nobody thought the issue worth briefing because, under state law, parties can always modify a written agreement—survivability clause notwithstanding.

pursuant to the integration clause, the Updated Terms are the *only* ones that govern.

Even if a clear and specific waiver were required, however, the Updated Terms would qualify. TTI told users it was altering "how we'll resolve disputes" when it gave notice of the Updated Terms. ER-80. The forum-selection clause then stated that it applies to "[*a*]*ny* claim, cause of action[,] or dispute." ER-86 (emphasis added). It further stated that litigation in California is the "*exclusive*[]" way to "resolve[]" disputes. *Id.* (emphasis added). And the integration clause stated that the Updated Terms "constitute the *whole* legal agreement" and "*completely* replace *any* prior agreements." ER-83 (emphases added). It is difficult to imagine clearer or more specific language. To demand more is to impose a magic-words test—something this Court refuses to do. *See, e.g.*, *Goldman Sachs*, 747 F.3d at 744 ("[W]e decline to impose formal incantations when applying general state-law principles of contract interpretation."); *Marsh v. J. Alexander's LLC*, 905 F.3d 610, 626 n.16 (9th Cir. 2018) (similar).

### 2. There Is No Retroactivity Issue—and Regardless, the Forum-Selection Clause Applies Retroactively.

Edwards next misses the mark by arguing that "the claims that [she] seeks to arbitrate accrued before the Updated Terms came into effect," and that "the forum-selection clause does not apply to them retroactively." Edwards Br. 28.

Edwards's retroactivity argument turns on when she says her *claims* accrued, but for purposes of determining which *dispute*-resolution provision applies—and whether it applies *retroactively*—the question is when the *dispute* arose. After all, parties are free to

13

agree about how to resolve their disputes regardless of when any underlying claims accrued. *See, e.g.*, *Salgado v. Carrows Rests., Inc.*, 244 Cal. Rptr. 3d 849, 853 (Cal. Ct. App. 2019) ("[T]he contention that an agreement to arbitrate a dispute must pre-date the actions giving rise to the dispute is misplaced." (internal quotations omitted)); *see also Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 304 n.10 (2010) (observing the "general rule" that "parties may agree to arbitrate past disputes *or future disputes based on past events*" (emphasis added)). And the forum-selection clause in the Updated Terms covers not just "claim[s]," but "dispute[s]." ER-86.

Courts in California and elsewhere agree that a dispute arises "when the parties bec[o]me adverse to one another," which is usually "when an injured party sends the defendant a demand letter" or "requests arbitration." *Memmer v. United Wholesale Mortg., LLC*, 135 F.4th 398, 409 (6th Cir. 2025); *see Cornelius v. CVS Pharm. Inc.*, 133 F.4th 240, 247-48 (3d Cir. 2025) (similar); *Famuyide v. Chipotle Mex. Grill, Inc.*, 111 F.4th 895, 898 (8th Cir. 2024) (similar); *Kader v. S. Cal. Med. Ctr., Inc.*, 317 Cal. Rptr. 3d 682, 688 (Cal. Ct. App. 2024) (similar).[4] Here that was no earlier than December 2023 (when

---

[4] Edwards dismisses these cases because they involved the Ending Forced Arbitration of Sexual Assault and Sexual Harassment Act. Edwards Br. 29. But whether that statute applies depends on when the dispute arose. *See* 9 U.S.C. § 401. These cases thus explain how to determine when the dispute here arose.

Edwards is also wrong that TTI "waived" any argument about when the dispute here arose. Edwards Br. 28. TTI expressly argued below that there is no retroactivity issue in part because "[Edwards] and [D.B.] agreed to send all claims to court instead of arbitration *long before* [Edwards] filed her arbitration demand." ER-35.

14

Edwards's counsel first contacted TTI), and arguably not until March 2024 (when counsel first identified Edwards or D.B. as potentially having a dispute with TTI). TTI Br. 8-9. Either way, that came *after* the Updated Terms took effect in July 2023.

Regardless, the forum-selection clause *does* apply retroactively. California law is clear that a dispute-resolution provision applies to preexisting disputes and accrued claims unless it expressly provides otherwise. In other words, the rule is the opposite of the one Edwards endorses. *See, e.g.*, *Franco v. Greystone Ridge Condo.*, 252 Cal. Rptr. 3d 149, 156 (Cal. Ct. App. 2019) (dispute-resolution provision applying to "[a]ny and all claims" applied to "*all* claims, whether they had already accrued, or not, at the time the [a]greement was executed"); *Salgado*, 244 Cal. Rptr. 3d at 852-53 (similar); *Colachis v. Griswold*, 2008 WL 5395682, at *3 (Cal. Ct. App. Dec. 29, 2008) (similar); *see also Pambakian v. Blatt*, 859 F. App'x 808, 809 (9th Cir. 2021) (relying on *Franco*).

Edwards tries to distinguish *Franco* and *Salgado* by noting that they "concerned the application of a later-signed *arbitration* clause," whereas here the later agreement includes the *forum-selection* clause. Edwards Br. 37. But the point is that under state law a dispute-resolution provision presumptively applies retroactively. *Franco* and *Salgado* simply show that this rule is not one-sided; a dispute-resolution provision presumptively applies retroactively whether it requires arbitration or litigation.

### 3. The Updated Terms "Relate To" This Dispute.

Edwards next observes that the forum-selection clause applies to claims "arising out of or relating to [the Updated] Terms"—and she argues that her claims instead arise

out of or relate to D.B.'s use of the TikTok platform. Edwards Br. 30-31.

This is wordplay. D.B. and Edwards agreed to the Updated Terms. TTI Br. 7. And the Updated Terms govern *use* of the TikTok platform; indeed, they are "[the] agreement … by which you may *access and use* the [p]latform." ER-80 (emphasis added). The Updated Terms also include the forum-selection and integration clauses (on which TTI relies) and choice-of-law provision (on which Edwards relies). ER-83; ER-86. This dispute thus arises out of, or relates to, the Updated Terms. *See, e.g.*, *Yei A. Sun v. Adv. China Healthcare, Inc.*, 901 F.3d 1081, 1086 (9th Cir. 2018) ("[F]orum-selection clauses covering disputes 'relating to' a particular agreement apply to any disputes that reference the agreement or have some 'logical or causal connection' to the agreement.").[5]

### 4. *Contra Proferentem* Does Not Apply.

Edwards next invokes *contra proferentem*—the rule that ambiguous contract terms are construed against the drafter. Edwards Br. 41-43. Edwards forfeited this argument by not raising it below. *See* ER-87–107; ER-186–211. It is also meritless.

---

[5] Edwards still has not explained how she reconciles her reliance on the California choice-of-law provision in the Updated Terms with her position that the Updated Terms do not apply at all. *See* TTI Br. at 22 n.9 (explaining this contradiction). Edwards suggests that "a forum court is entitled to apply its own law unless there is a true conflict with the law that might otherwise be applicable." Edwards Br. 50 n.10 (citation omitted). But Edwards herself pointed to the California choice-of-law provision in her briefing below; she did not argue that the District Court should apply California law merely as a default. ER-96 (¶ 28). Edwards also complains that "[TTI] did not dispute the application of California law below," Edwards Br. 50 n.10, but of course TTI did not do so: TTI has always argued that the Updated Terms apply, including the forum-selection clause and the adjacent California choice-of-law provision.

*Contra proferentem* does not apply because there is no ambiguity to resolve. The forum-selection clause states that "[*a*]*ny* claim, cause of action[,] or dispute[] arising out of or relating to [the Updated] Terms *shall* … be resolved *exclusively* in the U.S. District Court for the Central District of California or the Superior Court of the State of California, County of Los Angeles." ER-86 (emphases added). The integration clause states that the Updated Terms "constitute the *whole* legal agreement" and "*completely* replace *any* prior agreements." ER-83 (emphases added). These provisions mean what they say: Any claim, cause of action, or dispute must be litigated in a California court. Because this is clear, there is no turning to *contra proferentem. See* Cal. Civ. Code § 1654 ("*In cases of uncertainty not removed by the preceding rules [of interpretation]*, the language of a contract should be interpreted most strongly against the party who caused the uncertainty to exist." (emphasis added)); *Powers v. Dickson, Carlson & Campillo*, 63 Cal. Rptr. 2d 261, 267 (Cal. Ct. App. 1997) (§ 1654 applies "only as a tie breaker").

Edwards suggests the forum-selection clause is ambiguous at least as to whether it "reach[es] back." Edwards Br. 42. But as explained, there is no retroactivity, and even if there were, the forum-selection clause indeed applies retroactively. *Supra* Part II.B.2. What Edwards labels "ambiguity" is merely her disagreement with the application of state law to the forum-selection clause. That does not suffice. *See, e.g.*, *Int'l Union of Bricklayers & Allied Craftsman v. Martin Jaska, Inc.*, 752 F.2d 1401, 1406 (9th Cir. 1985).

### C. Edwards's "Alternative Grounds" Arguments Also Fail.

At the end of her brief, Edwards asks the Court to affirm on "three alternative

grounds" the District Court did not address. Edwards Br. 44. These arguments fare no better. Before explaining why, however, it is worth considering how they have evolved.

When Edwards argued below about unconscionability and the implied covenant, she emphasized that D.B. was "twelve years old" when she assented to the Updated Terms and "would not have understood [them]." ER-99–100 (¶¶ 39, 42). On appeal, however, Edwards says almost nothing about D.B.'s youth. Why the change? As TTI explained (at 34-35), if D.B. could not have assented to the Updated Terms at age twelve, then she could not have assented to the Original Terms at age eight. And if that is true, there is no basis for ordering arbitration based on the Original Terms. In short, Edwards's original unconscionability and implied covenant arguments boomeranged on her, and so she has largely traded them for new theories. But the new ones fail too.

### 1.     The Updated Terms Are Not Unconscionable.

Edwards contends that it would be unconscionable to apply the Updated Terms. She says the Updated Terms are "procedurally unconscionable" because TTI "drafted" them and "gave no indication" of the changes it made. Edwards Br. 47-48. And she argues the Updated Terms are "substantively unconscionable" because they eliminate arbitration as a means of dispute resolution, impose a one-year limitations period, and require litigating in California. *Id.* at 48-49. She is wrong across the board.

***Procedural Unconscionability***. The Updated Terms are not procedurally unconscionable simply because TTI drafted them. California courts have rejected similar arguments in cases involving companies and individual customers or users. *See,*

18

*e.g.*, *Lennar Homes of Cal., Inc. v. Stephens*, 181 Cal. Rptr. 3d 638, 689-90 (Cal. Ct. App. 2014); *Wayne v. Staples, Inc.*, 37 Cal. Rptr. 3d 544, 556 (Cal. Ct. App. 2006); *Dean Witter Reynolds, Inc. v. Super. Ct.*, 259 Cal. Rptr. 789, 795-98 (Cal. Ct. App. 1989); *see also Poublon v. C.H. Robinson Co.*, 846 F.3d 1251, 1261 (9th Cir. 2017) (even "contract of adhesion" is not *per se* procedurally unconscionable). Edwards cites no contrary authority.

Nor is Edwards correct that TTI "gave no indication" of the changes it made. As TTI explained (at 6), the Original Terms stated that TTI could "amend" them "from time to time" and "continued access or use of the [app] constitutes your acceptance." ER-118. Edwards and D.B. indisputably agreed to that provision. ER-55; ER 59–61; ER-94 (¶ 20). Then, in July 2023, TTI told users it was "updating its Terms of Service for U.S. users regarding how we'll resolve disputes." ER-57 (¶¶ 8-9); ER-80. TTI did so through an in-app pop-up notice that users could not dismiss that linked to a webpage with the changed provisions in full. ER-57 (¶¶ 8-9); ER-75–78; ER-80. Courts have held that similar methods put users on adequate notice—indeed, one such case involved TTI, the Updated Terms, and the same pop-up and notices. *See Heinz*, 2024 WL 5418632, at *3-4 (holding that same pop-up at issue in this case put users on notice); *see also B.D. v. Blizzard Entm't Inc.*, 292 Cal. Rptr. 3d 47, 67 (Cal. Ct. App. 2022) (pop-up with link to license agreement containing arbitration clause and class-action waiver was sufficiently conspicuous); *Shen v. United Parcel Serv.*, 2022 WL 17886012, at *4 (C.D. Cal.

19

Nov. 21, 2022) (single pop-up providing notice of changes put plaintiff on notice).[6]

**Substantive Unconscionability.** Even if there were procedural unconscionability, Edwards would still need to show substantive unconscionability. *See Armendariz v. Found. Health Psychcare Servs., Inc.*, 6 P.3d 669, 690 (Cal. 2000) (party invoking unconscionability must establish both procedural and substantive elements). She cannot do so because nothing in the Updated Terms "shocks the conscience." *Keebaugh v. Warner Bros. Entm't Inc.*, 100 F.4th 1005, 1023 (9th Cir. 2024).

To begin, requiring a dispute to be resolved in *court* could not possibly be unconscionable. That is how disputes have been resolved in this country since its founding. And that is so even if Edwards's retroactivity argument were correct, which it is not. *Supra* Part II.B.2. Put simply, requiring *judicial* resolution of a dispute does not "shock[] the conscience." *Keebaugh*, 100 F.4th at 1023. This also explains why Edwards cannot cite *any* authority holding that retroactive application of a forum-selection clause is unconscionable. *See* Edwards Br. 48-49. And adopting such a rule would make no sense given such provisions *presumptively* apply retroactively under state law. *Supra* p. 15.

Nor is it unconscionable to specify that the parties must litigate in California. *See Tompkins v. 23andMe, Inc.*, 840 F.3d 1016, 1029-30 (9th Cir. 2016) (forum-selection clause not unconscionable despite affidavits stating travel to forum state would be

---

[6] Edwards relies on *Porkorny v. Quixtar, Inc.*, 601 F.3d 987 (9th Cir. 2010), but there one party did not give the other party even a "fair opportunity to review" the contract (which, ironically, required binding arbitration). *Id.* at 997.

onerous); *see also Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 595 (1991) (enforcing forum-selection clause requiring interstate travel). Moreover, Edwards's counsel below was based in *Los Angeles* and Edwards herself filed her petition in *California*. ER-87. Edwards counters by citing *Magno v. The College Network, Inc.*, 204 Cal. Rptr. 3d 829 (Cal. Ct. App. 2016), but that case is far afield. There the court held that Indiana was an unreasonable choice of *arbitral* forum given the dispute arose from the defendant visiting the plaintiffs' homes in California and enrolling them in a nursing program there. *Id.* at 838-39. *Magno* reasoned that in an "essentially local" dispute like that it is unreasonable to require *arbitration* halfway across the country. *Id.* at 840.

Perhaps for these reasons, Edwards tries to shift focus to a different provision in the Updated Terms: one requiring parties to bring any claim within one year of the underlying acts. Edwards Br. 48-49. This argument, however, fails twice over.

*First*, "a provision shortening the applicable statute of limitations is enforceable so long as the limitations period is substantively reasonable." *Janda v. T-Mobile USA, Inc.*, 378 F. App'x 705, 709 (9th Cir. 2010). This Court has held that a one-year period *is* reasonable. *See id.*; *see also, e.g.*, *Soltani v. W. & S. Life Ins. Co.*, 258 F.3d 1038, 1044-45 (9th Cir. 2001) (six months reasonable); *Han v. Mobil Oil Corp.*, 73 F.3d 872, 877 (9th Cir. 1995) ("A contractual limitation … requiring a plaintiff to [sue] within 12 months … is a reasonable limitation[.]"). So have state courts. *See, e.g.*, *Kinney v. Youtube, LLC*, 2018 WL 5961898, at *5 (Cal. Ct. App. Nov. 14, 2018) ("We cannot conclude a one-year limitations period is harsh, oppressive, or shocking of the conscience. … A

21

one-year limitations period has been upheld in many types of cases."); *Wind Dancer Prod. Grp. v. Walt Disney Pictures*, 215 Cal. Rptr. 3d 835, 851 (Cal. Ct. App. 2017) (similar).

*Second*, the limitations provision is irrelevant to this appeal. Even if it were held unreasonable in a case properly challenging it, the court would simply sever it from the Updated Terms. *See* Cal. Civ. Code § 1670.5(a) ("If the court as a matter of law finds … any clause of the contract to have been unconscionable[,] … it may enforce the remainder of the contract without the unconscionable clause[.]"); ER-84 (severability clause in Updated Terms). That would leave the forum-selection clause in effect.

### 2. The Updated Terms Do Not Violate the Implied Covenant of Good Faith and Fair Dealing.

Edwards argues that the Updated Terms violate the implied covenant for essentially the same reasons they are unconscionable—lack of notice, one-year-limitations period, and retroactive effect. Edwards Br. 44-46. Again, that is incorrect.

To repeat: TTI did not modify the Original Terms "*sub silentio*." *Id.* at 45. On the contrary, TTI gave notice that it could amend the Original Terms; gave notice that it would do so; and gave notice of the Updated Terms. *Supra* p. 19. That satisfied good faith and fair dealing. *See, e.g.*, *Trudeau v. Google LLC*, 349 F. Supp. 3d 869, 881 (N.D. Cal. 2018) (no breach of implied covenant where Google provided "notice" of amended terms and gave "opportunity to opt out"); *Casas v. Carmax Auto Superstores Cal., LLC*, 169 Cal. Rptr. 3d 96, 99 (Cal. Ct. App. 2014) (similar). Additionally, the one-year period is not unreasonable, and in any event, it is severable. *Supra* pp. 21-22. And there is no

22

retroactivity—the dispute arose *after* the Updated Terms took effect. *Supra* pp. 13-15.

More fundamentally, Edwards's implied-covenant argument fails because she seeks to use that doctrine to contradict the express terms of the parties' contract that she deems "unreasonable." Edwards Br. 45. In other words, her argument here is unconscionability by a different name. But the implied covenant serves a different purpose: "[It] is read into contracts in order to protect the express covenants or promises of the contract, not to protect some general public policy interest[.]" *Carma Devs. (Cal.), Inc. v. Marathon Dev. California, Inc.*, 826 P.2d 710, 727 (Cal. 1992) (citations omitted). The implied covenant therefore "cannot contradict the express terms of a contract." *Alameda Health Sys. v. Alameda Cnty. Employees' Ret. Assn.*, 319 Cal. Rptr. 3d 710, 738 (Cal. Ct. App. 2024). Edwards's argument seeks to do just that; it aims to prevent TTI from amending the Original Terms even though the Original Terms expressly allowed TTI to amend them in just the way that it did. ER-118.

Edwards relies on *Cobb v. Ironwood Country Club*, 183 Cal. Rptr. 3d 282 (Cal. Ct. App. 2015), which she quotes as holding that "the implied covenant … prohibits a party from mak[ing] unilateral changes to an arbitration agreement that apply retroactively to accrued or known claims because doing so would unreasonably interfere with the [opposing party's] expectations." *Id.* at 286 (citation omitted). But *Cobb* is nothing like this case. There the court found a violation of the implied covenant where the parties had been in active litigation for months when the defendant independently amended bylaws to require dismissal of plaintiffs' ongoing lawsuit in favor of arbitration. *Id.* at

23

285. This case involves the opposite facts. There was no pending lawsuit when the Updated Terms took effect—not even a demand letter. And the Updated Terms moved the parties back into court—the traditional means by which disputes are resolved.

### 3. Edwards Cannot Disaffirm the Updated Terms.

Edwards finally contends that she disaffirmed the Updated Terms on D.B.'s behalf by filing the petition to compel. Edwards Br. 49-51. Under California law, "a minor may make a contract in the same manner as an adult, subject to the power of disaffirmance." Cal. Fam. Code § 6700. To disaffirm, however, a minor must repudiate "the *entire* contract, not just the irksome portions." *R.A. v. Epic Games, Inc.*, 2019 WL 6792801, at *6 (C.D. Cal. July 30, 2019) (emphasis added). This is a "longstanding and general rule." *C.M.D. ex rel. De Young v. Facebook, Inc.*, 621 F. App'x 488, 489 (9th Cir. 2015). And yet Edwards's disaffirmance argument defies it. There is no dispute that D.B. continued to create TikTok accounts and use the TikTok app, subject to the Updated Terms, after the purported disaffirmance. ER-55; ER-60; ER-81; *Edwards v. TikTok Inc.*, No. 5:24-cv-02039, ECF 35-3 ¶ 282 (C.D. Cal. Dec. 4, 2024) ("Claimant continues to use TikTok's platform."). Under the law of disaffirmance, D.B. cannot both continue to use the service and reject the Updated Terms that govern its use.

*Facebook* is instructive. There this Court held that although the minor plaintiffs sought to disaffirm Facebook's terms of service by filing suit, their continued use of Facebook "manifested an intention not to disaffirm." 621 F. App'x at 489; *see also E.K.D. ex rel. Dawes v. Facebook, Inc.*, 885 F. Supp. 2d 894, 899-900 (S.D. Ill. 2012)

24

(applying California law and reaching same result). The same was true in *Epic Games*—there the court held that a minor did not disaffirm a video-game company's license agreement by suing the company because he "continued to enjoy the benefits of the agreement" by playing the game after suing. 2019 WL 6792801 at \*6. So too here.

Edwards tries to avoid the rule that a party cannot reap the benefits of a contract and simultaneously declare it void by alleging that TikTok was so enticing that D.B. "became addicted to [it]." Edwards Br. 51. But the enticing nature of a product or service does not allow a minor to take the product or service while avoiding legal obligations that attach. Edwards cites no authority otherwise, and *Facebook* and *Epic Games*, which also involved enticing social media and games, recognize no such exception. Nor can this Court create such an exception as a rule of California law when the state legislature and state courts have not. Indeed, under California law, even the "*diagnosis* of a mental or physical disorder shall *not* be sufficient in and of itself to support a determination that a person … lacks the capacity to [contract]." Cal. Prob. Code § 811(d) (emphases added); *see also Burgoon v. Narconon of N. Cal.*, 2016 WL 192536, at \*2 (N.D. Cal. Jan. 15, 2016) (arbitration agreements valid despite addiction); *In re Preston*, 516 B.R. 606, 611 (C.D. Cal. 2014) (similar); *cf. Courtright v. Epic Games, Inc.*, 766 F. Supp. 3d 873, 897 (W.D. Mo. 2025) ("Plaintiff's mental incapacity defense purportedly created by K.C.'s gaming addiction also fails. Plaintiff cites no case law for this argument[.]"). Moreover, any finding of actual incapacity must be "based on evidence of a deficit in … the person's mental functions." *Id.* § 810(c). There is no such evidence here.

25

## CONCLUSION

The Court should reverse the order granting the petition to compel.

March 25, 2026                    Respectfully submitted,


                                 s/ *Noel J. Francisco*

Anthony J Weibell                Noel J. Francisco
MAYER BROWN LLC                  David K. Suska
3000 El Camino Real              JONES DAY
Two Palo Alto Square             51 Louisiana Avenue, N.W.
Palo Alto, CA 94306-2112         Washington, D.C. 20001-2113
(650) 331-2000                   (202) 879-3939
aweibell@mayerbrown.com          njfrancisco@jonesday.com
                                 dsuska@jonesday.com


*Counsel for Respondent-Appellant TikTok Inc.*

26

## UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

**Form 8. Certificate of Compliance for Briefs**

*Instructions for this form:* *http://www.ca9.uscourts.gov/forms/form08instructions.pdf*

**9th Cir. Case Number(s):** 25-5868

I am the attorney or self-represented party.

**This brief contains** 6996 **words,** including 0 words manually counted in any

visual images, and excluding the items exempted by FRAP 32(f). The brief's type

size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief *(select only one)*:

[x] complies with the word limit of Cir. R. 32-1.

[ ] is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

[ ] is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

[ ] is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

[ ] complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:
    [ ] it is a joint brief submitted by separately represented parties.
    [ ] a party or parties are filing a single brief in response to multiple briefs.
    [ ] a party or parties are filing a single brief in response to a longer joint brief.

[ ] complies with the length limit designated by court order dated _____.

[ ] is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature:** s/ Noel J. Francisco         **Date**: March 25, 2026
*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at forms@ca9.uscourts.gov*

**Form 8**         *Rev. 12/01/22*

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing document was filed with the Clerk of Court for the United States Court of Appeals for the Ninth Circuit on March 25, 2026 by using ACMS. I hereby certify that all participants in the case are ACMS users and that service will be accomplished by ACMS.

March 25, 2026                                                          *s/ Noel J. Francisco*